## AMERICAN TRUST AND SAVINGS BANK ET AL. v. McGETTIGAN, RECEIVER.

[No. 17,779. Filed Feb. 17, 1899. Rehearing denied June 7, 1899.]

PLEADING.—*Demurrer.*—*Receiver.*—A demurrer to a complaint by a receiver to cancel a mortgage existing on the trust property calls in question not only the sufficiency of the facts alleged to constitute a cause of action, but also the right of the receiver to maintain the action. *p. 586.*

RECEIVERS.—*Liens of Creditors.*—Where a court takes possession of the property of an insolvent corporation and appoints a receiver, it receives such property impressed with all existing rights and equities of creditors, and the relative rank of claims and the standing of liens remain unaffected by the receivership. *p. 587.*

MORTGAGE.—*Record.*—*Validity.*—*Fraud.*—A mortgage executed by a corporation to secure a loan is valid as against existing creditors, although accompanied by an agreement that its execution should be kept concealed, and that it should not be recorded within the time prescribed by law. *pp. 588, 589.*

SAME.—*Action to Set Aside.*—*Receivers.*—A receiver cannot maintain an action on a complaint to set aside a mortgage existing on the trust property on the ground that the mortgage was not recorded, and that its execution was concealed, where the complaint shows upon its face that the relief sought is for the equal benefit of existing creditors and subsequent creditors without notice. *pp. 589, 590.*

From the Marion Circuit Court. *Reversed.*

*McBride & Denny, D. P. Baldwin, Mason & Latta* and *Blackledge & Thornton,* for appellants.

*Ayres & Jones, Miller, Winter & Elam* and *Elliott & Elliott,* for appellee.

HADLEY, J.—This suit was commenced by John E. Mc-Gettigan, receiver of the Premier Steel Company of Indianapolis, against the American Trust & Savings Bank of Chicago and the Bank of Commerce of Indianapolis, as trustees of a certain bond issue of said steel company, Henry E. Southwell *et al.,* to cancel the mortgage given by the Premier Steel Company to secure bonds issued by it to the amount of $300,000. The substance of the complaint, after

certain formal allegations, is as follows:    That the plaintiff
was duly appointed the receiver of the Premier Steel Com-
pany by the Marion Circuit Court, and was by order of court
authorized to bring this suit to test the validity of this mort-
gage; that on the 7th day of July, 1891, by a resolution of
the board of directors, the president and secretary of the
Premier Steel Company were directed to execute 300 bonds,
of $1,000 each, secured by mortgage on the property of the
company, and to dispose of them to the best advantage; that
the bonds, bearing date August 1, 1891, and a mortgage to
secure the same, were signed by the president and secretary,
covering the property of the company, which is described in
the complaint; that said officers were not authorized by said
company to pledge said bonds as collateral security for loans;
that the bonds and mortgage were signed by the president
and secretary (a copy of said mortgage being filed as a part
of the complaint, as exhibit "A"), but the bonds were not
sold or disposed of in any way, and the company thereafter
held itself out as being possessed of the property free from
encumbrance, and procured large loans and credits upon the
strength of such representations; that on the 13th day of
July, 1892, being then insolvent, and largely indebted for
loans and credits obtained as aforesaid, all of which was at
the time well known to defendant Southwell, and being at
the time indebted to Southwell in the sum of $20,000 upon
two notes dated December 21, 1891, for $10,000 each, pay-
able one year after date, and having obtained from Southwell
an additional loan of $30,000 upon three notes of $10,000
each, dated July 13, 1892, payable one year after date, all of
said notes being indorsed by Charles W. DePauw, president
and W. H. Coen, secretary and general manager, of said
company, thereupon said general manager and said South-
well executed the agreement of that date, which is made a
part of the complaint, and which is in the following words:
"This memorandum of agreement, made this thirteenth
day of July, A. D. 1892, between the Premier Steel Com-

pany of Indianapolis, Indiana, and H. E. Southwell of Chicago, Illinois, witnesseth: Whereas, H. E. Southwell is now the holder and owner of five certain notes of the Premier Steel Company, for $10,000 each, payable to the order of C. W. DePauw, and by him indorsed, payable one year after date, two of said notes being dated December 21, 1891, and three being dated July 13, 1892; and whereas, The Premier Steel Company has deposited with the American Trust & Savings Bank of Chicago, 300 of its six per cent gold bonds, of $1,000 each, payable twenty years after date, secured by a mortgage deed on the property of said Premier Steel Company, dated August 1, 1891, *in escrow*: Now, it is hereby agreed between the parties hereto that said bank shall continue to hold said bonds and said mortgage deed, which deed has not been filed of record, upon the following understanding, to wit: That, whenever the owner of said notes shall feel himself insecure in regard to the same, then, upon his request, said bank shall file said trust deed for record, notice of said request to be given previously to said Premier Steel Company; otherwise, said bonds and trust deed to remain as at present until the payment of said notes. It is further agreed that if, at any time before the expiration of the aforesaid notes, said Premier Steel Company shall desire a further loan of $50,000, and said Southwell shall not be able to furnish said amount, then the said trust deed shall be filed of record, and $200,000 of said bonds shall be released to said steel company, the other $100,000 remaining as security for the aforesaid notes. Witness our hand and seals the day and year above written. Premier Steel Company, by W. H. Coen, Sec'y & Gen'l Man'g'r. H. E. Southwell."

It is then averred that such secretary and general manager had no sufficient authority from said company to execute said agreement; that at the time said Southwell well knew that said company was insolvent, or in danger of insolvency; that said company was largely in debt, and intended and expected to buy large quantities of material upon credit, and

to borrow large sums of money, and incur large debts, to carry on its business and construct new and additional buildings, etc., all of which improvements to said property were by its terms to be covered by said mortgage; that, knowing that the business of said company was largely carried on upon credit, and that to record the mortgage would injure the credit of the company and prevent it from obtaining credit, and knowing that it was obtaining and was intending to obtain credit by holding out to the world that its property was free from encumbrance, said Southwell fraudulenly agreed with said company to withhold said mortgage from the record for the purpose of permitting said Premier Steel Company fraudulently to hold itself out as being possessed of said property free of encumbrance; that thereafter said company contracted large debts; borrowed large sums of money, and obtained materials and property upon credit, upon such representations that its property was free from encumbrance, and that such credits and property could not have been obtained otherwise, and that a very large part of the indebtedness of said company now existing, to wit, more than $100,000, is for loans and credits and property obtained after said agreement was made, and while the mortgage was so fraudulently withheld from the record; that the same was so fraudulently withheld until the 29th day of April, 1893, a few days prior to the appointment of said receiver, when said Southwell caused said mortgage to be placed on record; that said bonds have never been sold or in any way disposed of, except to place the same in the American Trust & Savings Bank aforesaid as security for said loans so made from Southwell; that, within a day or two before this receiver was appointed, said Charles W. DePauw, knowing that the receiver was about to be appointed, took possession of $200,-000 of the bonds, and still retains possession thereof, claiming that he is entitled to them for the benefit of the creditors of the company upon whose paper he is indorser, and that he has made a voluntary assignment to the Union Trust Company

of Indianapolis; that said mortgage is an apparent lien upon said real estate, and casts a cloud upon the title of the plaintiff; that said Southwell claims that he has and holds a lien upon said real estate prior and superior to that of the plaintiff, and of the creditors aforesaid who gave credit to said Premier Steel Company upon the understanding that the property was free from encumbrance; that said Premier Steel Company is insolvent; that said Southwell ought not to be permitted to hold said mortgage as a lien prior to the rights of the creditors of said company who gave credit to said company upon the faith that said property was unencumbered as aforesaid; and that the said Charles W. DePauw and the Union Trust Company have no rights to or interest in said bonds. Prayer, that the mortgage be adjudged void and canceled; and that the title of the plaintiff to the property be quieted as against any claim of the defendants, and for all other proper relief.

The separate demurrers of the American Trust & Savings Bank and the Bank of Commerce, trustees, and Henry E. Southwell, to the complaint, were overruled. Answers to the complaint were filed, but, as no question is presented to this court upon them, they need not be noticed. The trustees filed a cross-complaint, in which they joined in asking a foreclosure of the mortgage. To the cross-complaint the receiver filed his separate answer, in five paragraphs. The first paragraph of answer covers substantially the same ground as the complaint. The second and third paragraphs present substantially the same facts pleaded in estoppel. The trustees filed demurrers to each the first, second, and third paragraphs of this answer. These demurrers were overruled.

The demurrers of appellants to the complaint call in question not only the sufficiency of the facts to constitute a cause of action, but also the right of the plaintiff to maintain the suit. *Pence* v. *Aughe,* 101 Ind. 317; *Wilson* v. *Galey,* 103 Ind. 257; *Farris* v. *Jones,* 112 Ind. 498.

The first assault made upon the complaint is that the plaintiff cannot maintain this suit on behalf of all the creditors, as he shows by his complaint one class of creditors that has no right or equity that can be asserted against the mortgage. It is well established that when a court takes possession of the property of an insolvent corporation, and appoints a receiver, such receiver "is the arm of the court," by which it administers the trust for the benefit of the creditors. But the court receives such property impressed with all existing rights and equities of creditors, and the relative rank of claims, and the standing of liens remains unaffected by a receivership. Every legal and equitable lien upon the property of the corporation is preserved, with the power of enforcing it. Gluck & Becker, Rec., section 6; 20 Am. & Eng. Enc. of Law, p. 407; *Woerishoffer* v. *North River, etc., Co.,* 99 N. Y. 398-402, 2 N. E. 47; *Hubbard* v. *Hamilton Bank,* 7 Metc. (Mass.) 340; *Minchin* v. *Nat. Bank,* 36 N. J. Eq. 436; *Snow* v. *Winslow,* 54 Iowa, 200, 6 N. W. 191; *Hale* v. *Frost,* 99 U. S. 389. And it is as much the duty of a receiver, in administering an estate, to protect valid preferences and priorities, as it is to make a just distribution among the general creditors. He is strictly the officer of the court, and it is his duty so to conduct the business that the interests of all persons shall be protected. He should not advocate the cause of one claimant against another. Between them he is indifferent, owing a like duty to all, and for that reason should, as far as possible, see to it that each has an equal opportunity to enforce his claim. Gluck & Becker, Rec., sections 28, 48; *Nat. Bank, etc.,* v. *Barnum, etc., Works,* 58 Mich. 315, 317, 24 N. W. 543; *Attorney-General* v. *Security Ins. Co.,* 79 N. Y. 267, 271. It is true, as asserted by counsel for appellants, that the right of the receiver to bring this action depends upon the right of the creditors represented by him to have united in bringing it, if no receiver had been appointed. The complaint and argument by appellee proceed upon the assumption that

the appellee, in bringing it, was acting on behalf of all the creditors to set aside a fraudulent mortgage. In him all the creditors unite. His complaint is their joint complaint, in which they seek to have the mortgage adjudged absolutely void. They do not ask the court to recognize superior equities in the junior creditors, and for postponement of the mortgage to such equities, but insist that, upon the facts pleaded, the mortgage should be canceled and entirely swept away, and be held of no force and effect whatever as against or in favor of any one. If the complaint shows that the creditors could not join in such a complaint, it is bad.

It is a familiar rule of pleading that, when several persons join in an action, the complaint must show a good cause of action in all, or it is insufficient on demurrer for want of facts. *Brown* v. *Critchell*, 110 Ind. 31, 35; *Brumfield* v. *Drook*, 101 Ind. 190, 197; *Parker* v. *Small*, 58 Ind. 349, 352; *Maple* v. *Beach*, 43 Ind. 51, 59.

We do not doubt the receiver's right to maintain an action to set aside a mortgage when the facts pleaded by him show the mortgage to be void, or show it to be voidable at the suit of all the creditors. This court has so held (*Nat. Bank* v. *Nat. Bank*, 141 Ind. 352), and we are satisfied that the rule is correctly stated in that case. But this complaint does not present such a case. It is alleged that the Premier Steel Company, being "insolvent and largely indebted", entered into the agreement of July 13, 1892. Being "insolvent and largely indebted" implies that the steel company had existing creditors when the agreement of July 13th was executed. It also affirmatively appears that Southwell became a creditor for $50,000 at the time of the agreement, and received from the company a preference it had the undoubted right to give.

It is shown that the security given was for an adequate consideration received,—that Southwell contributed to the estate of the debtor as much as he took away,—and it is not shown how the transaction in any way injured the previous creditors, or could operate to defraud them. The

mortgage was valid, as against existing creditors, even though accompanied by an agreement that its execution should be kept concealed, and that it should not be recorded within the time prescribed by law. *Hutchinson* v. *Nat. Bank*, 133 Ind. 271, 281. A receiver, while acting for a court of conscience, must act impartially, and may not sequester the security of one creditor for the benefit of others who have no equity. The only persons, if any, injured by the alleged fraud, were the subsequent creditors without notice; and the receiver cannot maintain an action that shows upon the face of it, that the relief sought will place the creditors having an equity in a worse condition, and the creditors having no equity in a better condition, than they occupied before his appointment.

The complaint presents facts indicating a controversy among the creditors as to equities in the debtor's property. Its averments are not that the contract giving Southwell a security was fraudulent, or for any reason invalid, as against prior creditors, but that the agreement to withhold the mortgage from record was fraudulent against those who became creditors on the faith that the property was unencumbered. It discloses a controversy that cannot be fully adjudicated in the absence of the creditors holding conflicting equities. The case presented is one of distribution, to which all the creditors should be made parties, and permitted to implead each other, and have their equities defined. Equity seeks the administration of insolvent estates by the shortest and cheapest methods available, and, holding the estate *in custodia legis*, a court of equity will not clothe its receiver with authority to sue, or permit a creditor to sue, and involve the trust property in litigation, and expose the estate to costs and attorney's fees, if there is open any other complete remedy, less expensive, and more comprehensive in its subjects. In application of this principle, it becomes obvious that the courts below should not have authorized the cross-complainants to institute their cross-action to foreclose the mortgage.

It goes but halfway. In it no equities can be adjudicated but those of parties. General creditors are not, and cannot be made, parties, unless possibly upon their own application. It may entail upon the estate heavy expenditures for costs. It implies a dispossession of the receiver, and sale by the sheriff; and it seems clear, in the interest of an economical administration of the trust, and a speedy settlement thereof, the court should order its receiver to sell the alleged mortgaged property free from liens of every character, under an order that all liens and claims should be transferred to the fund. This is but the exercise of a well recognized equitable power, and will bring all the creditors, all the beneficiaries of the fund, to a contest in its distribution, with ample opportunity to implead each other, and receive a full and complete adjudication of their equities.

The conclusion we have reached makes it unnecessary to review the alleged subsequent errors. The judgment is reversed, with instructions to sustain appellants' demurrers to the complaint, without leave to amend, and to order a dismissal of the consolidated cross-complaint, and for further proceedings in accordance with this opinion.

Dowling, J., was absent.