PRESCOTT ET AL. *v.* COPPAGE, RECEIVER FOR SECURITY FINANCIAL INSURANCE CORPORATION ET AL.

[No. 3, September Term, 1972.]

*Decided October 30, 1972.*

Motion for rehearing or for modification of opinion filed November 22, 1972; denied December 5, 1972.

The cause was argued before BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ., and W. ALBERT MENCHINE, Associate Judge of the Third Judicial Circuit (now Associate Judge of the Court of Special Appeals), specially assigned.

*Robert L. Burchett,* with whom were *Miller, Miller & Canby* on the brief for J. Ingram Medley and Aetna Casualty & Surety Company, part of appellants and cross-appellees. *William A. Ehrmantraut,* with whom were *Donahue & Ehrmantraut* on the brief for Stedman Prescott, Jr., other appellant and cross-appellee.

*James P. Garland* and *Albin M. Plant,* with whom were *Charles R. Moran* and *Semmes, Bowen & Semmes* on the brief, for appellee and cross-appellant.

MENCHINE, J., delivered the opinion of the Court.

This is a sequel to *Coppage, Receiver v. Maryland Thrift Savings and Loan Company,* 253 Md. 238, 252 A. 2d 869 [1969].

The original plaintiff herein will hereafter be referred to as "Coppage." The defendants will hereafter be referred to as "Medley," "Aetna," or "Prescott."

Coppage sued Medley and Prescott individually and Aetna as surety of Medley to recover $40,000.00 with interest, claimed to have been a priority obligation of the receivership of Maryland Thrift Savings and Loan Company, Inc., but which Medley, as receiver, and Prescott as counsel for the receiver, failed to pay but caused its assets to be paid to lower priority creditors. Medley and Aetna filed a cross-claim against Prescott seeking judgment grounded upon the theory that their liability to Coppage was the product solely of the negligence of Prescott and that he is liable for all of the original plaintiff's claim against them.

The trial court in the original suit gave judgment to Coppage against Medley and Aetna for $40,000.00, plus interest from January 9, 1962, but not to exceed the proceeds of certain collateral as to Medley and not to exceed $50,000.00, the amount of its bond, as to Aetna, but with judgment in favor of the defendant Prescott. In the cross-claim the trial court gave judgment in favor of Medley and Aetna against Prescott in the amount of $40,000.00, with interest from January 9, 1962, within the limitations previously recited.

Medley and Aetna have appealed from the judgment against them. Prescott has appealed from the judgment against him in favor of Medley and Aetna in the cross-claim. Coppage has appealed from the court's failure to enter judgment against Prescott in the original action.

The facts are these:

Coppage was receiver for Security Financial Insurance Corporation (Security) ; Medley was receiver for Mary-

land Thrift Savings and Loan Company (Maryland Thrift). Maryland Thrift was indebted to Security on two promissory notes in the face amounts of $40,000.00 and $38,000.00, dated respectively January 9, 1962 and January 17, 1962. Although receivership assets of Maryland Thrift were sufficient to pay the principal and interest on both notes in full, Medley, Receiver, paid only $44,839.20, including interest. He thereafter made distribution to depositors of Maryland Thrift after petition and order of court. The rights of depositors to distribution were inferior to the rights of Security. The distribution by Medley, Receiver, depleted the assets below the amount required to pay the balance of the obligation due Security.

In the connected case of *Coppage v. Maryland Thrift, supra,* this Court declared the issues therein decided to be as follows:

> "There are four questions presented in this appeal, (1) whether the claim on behalf of Security was filed at the proper time, (2) whether the claim should have been denied on the basis that Medley was led to believe that the obligation from Maryland Thrift to Security had been paid, (3) whether 'the equities are such that the loss, if any, should be at the hands of the claimant and not the receiver for Maryland Thrift', as stated by the chancellor, and (4) whether the claim should have been denied on the basis of a setoff under the insurance policy issued by Security."

All issues were decided adversely to Maryland Thrift. On remand, the chancellor passed his order and decree: (1) allowing the claim of Coppage; (2) directing Medley, Receiver, to state an account and refer to an auditor under Rule BP9 of the Maryland Rules of Procedure, and (3) setting aside the prior distribution to shareholders if the funds in the hands of the receiver were

insufficient to pay the claim of Security. No appeal was taken from that order and decree.

In the instant case it is conceded: (a) that the fund remaining in the hands of Medley, Receiver, is insufficient to pay the amount ordered to be paid to Security, and (b) that Medley, Receiver, has not and will not attempt recovery of the distribution made to shareholders.

Medley's and Aetna's principal attack on the judgment of the trial court is upon the grounds: (1) that the receiver is excused from personal liability because he acted pursuant to a court order, and (2) that the negligence *vel non* of the receiver should be determined in these proceedings, wholly unaffected by collateral estoppel suggested as arising under *Coppage v. Maryland Thrift, supra.*

Prescott joins Medley and Aetna in those contentions and alternatively urges that his negligence, if any, was not the proximate cause of the loss to Security, and that contributory negligence of Medley bars recovery against him in the cross-claim. Medley, Aetna and Prescott all join in attacking allowance of interest on the judgments as granted by the trial court. Prescott also suggests the defense of limitations.

Coppage urges that Prescott is jointly and severally liable in the original action and that the limitation as to interest and as to collateral security value imposed by the trial court upon the extended judgments was erroneous.

### Medley's Personal Liability

Medley and Aetna rely upon *Clark* on *Receivers* as supporting their contention that the receiver is not personally liable because he acted under an order of court. Their reliance is misplaced. It is true that *Clark* in general discussions in the chapter "Liabilities of a Receiver" states broadly in § 388 and § 392 that "it is not conceivable that such receiver would be liable personally"

for an act done pursuant to the lawful order of the appointing court. However, in the instant case, the order for distribution was obtained *ex parte* on the basis of the very representations that are said to have been negligently made.

It seems plain that the rule stated by *Clark* has no application to a fiduciary who negligently distributes to persons other than the beneficiary as the result of a course of action pursued by the fiduciary himself that was bottomed upon an order obtained through incorrect information submitted by him to the court. The correct rule as to personal fiduciary liability is set forth in *Restatement of the Law of Trusts, 2d,* in § 226:

> "§ 226. Liability for payments or conveyances made to persons other than the beneficiary.
>
> If by the terms of the trust it is the duty of the trustee to pay or convey the trust property or any part thereof to a beneficiary, he is liable if he pays or conveys to a person who is neither the beneficiary nor one to whom the beneficiary or the court has authorized him to make such payment or conveyance."

Comment (b) to the cited section reads as follows:

> "b. Mistake of law or fact.
>
> The trustee is liable although he makes the payment or conveyance under a reasonable mistake of law or of fact. If he is in doubt as to the proper person to whom a payment or conveyance should be made, *he can apply to the court for instructions and will be protected by the order of the court against claims of all persons who were made parties to the proceedings.*
>
> The trustee is liable although he reasonably believes that the person to whom he pays or con-

veys is the beneficiary or that the payment or conveyance is authorized or directed by the beneficiary or by the termination of the trust." [Italics supplied]

That Maryland subscribes to the doctrine announced in the *Restatement* is apparent from *Prince deBearn v. Winans*, 111 Md. 434, 472, 74 A. 626, 632 [1909]:

"If * * * the trustees were in any doubt as to the proper disposition to be made of the fund in their hands, they should have applied to a Court of equity, in accordance to the long-existing practice in this State, by a bill convening all parties in interest, and procured a construction of the deed of trust and a disposition of the fund under the direction and supervision of the Court. If they had adopted that course and made the distribution of the fund under the Court's decree, they would have been protected and the appellant would have been concluded by it."

See also *County Corporation v. Semmes*, 169 Md. 501, 523, 182 A. 273, 283 [1936], wherein receivers, empowered by court order to continue the operation of a business, were found accountable where subsequent operations of that business produced substantial operational deficits:

"* * * when, in the exercise of such caution and diligence as would commonly be expected under the known facts and circumstances, a reasonably prudent person, who was in charge of the affairs of the utility, would, except through his default, have known of the actual financial loss then incurred and involved in the further operation of the business of public carrier; and would, in consequence of such knowledge, have submitted * * * these facts to the court and requested its further direction * * *."

A receiver is personally liable for an improper distribution of assets.

### Medley's Liability as Affected by Collateral Estoppel

The doctrine of collateral estoppel bears a close relationship to *res judicata*. In his able opinion the trial judge said:

> "The doctrine of collateral estoppel might be explained by first describing the two basic effects of a judgment. They are first, that of deciding the rights and liabilities of the parties and second, that of pronouncing a sentence of law on the ultimate facts admitted by the pleadings or proved by the findings. It is to the first effect that the doctrine of res judicata applies, barring a suit to relitigate a cause of action already decided by a Court. It is to the second effect that the doctrine of collateral estoppel applies, rendering a sentence of law conclusive as to those issues of ultimate fact determined by the Court; and no attempt may be made to relitigate such issues by the same parties or their privies in any subsequent action."

Although the case of *Ugast v. LaFontaine*, 189 Md. 227, 231, 55 A. 2d 705, 707 [1947], involved application of *res judicata* rather than collateral estoppel, the language used therein by this Court at page 231 is equally applicable to the latter doctrine: "Public policy dictates that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered settled as between the parties."

In *State of Maryland v. Capital Airlines, Inc.*, 267 F. Supp. 298, Judge Northrop of the United States District Court for the District of Maryland, in an opinion declaring Maryland law, said at page 304:

> "It would seem to this court that as long as

the party against whom the judgment was sought to be used had a full and fair opportunity to be heard on the issue there would be no constitutional impediment to the application of the doctrine of collateral estoppel where there was no mutuality. All that due process requires is that 'the thing to be litigated was actually litigated in a previous suit, final judgment entered and the party against whom the doctrine is to be invoked had full opportunity to litigate the matter and did actually litigate it.' "

He further declared at page 304 that applicability of the doctrine of collateral estoppel is established, if affirmative answers are compelled to the following questions:

"Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication? Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?"

In *Pat Perusse Realty v. Lingo*, 249 Md. 33, 45, 238 A. 2d 100, 107 [1968], this Court, after citing *State of Maryland v. Capital Airlines, Inc., supra,* said: "We have concluded that Judge Northrop was clairvoyant in his prediction as to the view this Court would take on mutuality of estoppel in a proper case." We later, in *Greenwell v. American Guaranty Corporation*, 262 Md. 102, 114, 277 A. 2d 70, 76 [1971], adopted fully the questions he posed as determinative of the issue if affirmatively answered.

The liability of the receivership to Coppage on the note here sued upon was finally litigated in *Coppage v. Maryland Thrift, supra.* We said at page 251: "Medley

urges that the trial court's finding of fact that Medley was led to believe that the entire obligation of Security had been paid should not be reversed" and at page 253 said: "We are not obliged in this opinion to work out the mechanics to be followed by Medley and the chancellor. *We are obliged to pass on the propriety of the action of the chancellor in sustaining Medley's exceptions to the Coppage claim on behalf of Security. We hold the chancellor to have been in error.*" [Italics supplied]

The following defenses are here attempted to be reasserted by Medley, and Aetna as to Coppage:

1. That they were misled by Coppage or his attorney.

2. That they were justified in the belief that Maryland Thrift's obligation to Security had been paid in full.

3. That they were entitled to rely on their possession of a facsimile promissory note as indicia of its payment.

Each such defense had been interposed, and was considered and rejected by this Court at page 251 of the earlier decision.

Thus it plainly appears as to Medley that the identical issue of liability was decided in the prior action; there was final judgment on the merits, and he was given a fair opportunity to be heard on that issue.

Neither Coppage nor Medley were actual parties to the original action against Maryland Thrift. Medley was, however, the receiver appointed to manage the wind-up of the affairs of Maryland Thrift and was the active participant in seeking rejection of the Coppage claim in the prior action. Coppage, Receiver, was there a claimant to the monies now again in controversy. This relationship brings both within the rule announced in *Ugast v. LaFontaine, supra,* at page 232:

"So, where persons, although not formal parties of record, have a direct interest in the suit, and in the advancement of their interest take open and substantial control of its prosecution, or

> they are so far represented by another that their interests receive actual and efficient protection, any judgment recovered therein is conclusive upon them to the same extent as if they had been formal parties."

Accordingly, the trial judge quite properly applied the doctrine of collateral estoppel as prohibiting relitigation of the issue. Thus Medley's personal liability to Coppage for his default as receiver is established in the prior proceeding.

### Liability of Aetna

Aetna here appears to rely wholly on the defenses available to Medley. A surety is *prima facie* bound by a judgment or decree against its principal. *Watkins v. State,* 162 Md. 609, 161 A. 173 [1932]. Aetna offered no offsetting evidence.

In the trial court Aetna suggested—but did not here brief or argue the point—that the terms of its bond did not protect against *mere neglect* by the receiver. The bond provided, among other things, that Medley "shall duly account for what shall come into his hands * * * and faithfully perform all his duties as such receiver." The language clearly is susceptible to an interpretation that it was intended to protect creditors from improvident distribution of assets. In *Fidelity and Deposit Co. v. Mattingly Lumber Co.,* 176 Md. 217, 222, 4 A. 2d 447, 450 [1939], we adopted the language of 8 Am. Jur. [Bonds] 723: "With respect to the construction of fidelity bonds, it has been repeatedly held that where the instrument is reasonably susceptible of two constructions, one favorable to the insured, and one favorable to the insurer, that construction will be adopted which favors the liability of the insurer for the act or default in question."

Aetna, like Medley, is liable to Coppage.

## The Coppage Appeal as to Prescott

The trial court, incorrectly, we think, gave judgment in the original case to Prescott. He did so upon the ground that there was a lack of privity between Coppage and Prescott, and that the case did not fall within the facts and circumstances giving rise to a right to Coppage as a third party beneficiary. We believe that Coppage did stand in the position of a third party beneficiary under the facts and circumstances here existing.

In the receivership case Medley was appointed receiver by an order of the Circuit Court for Montgomery County, that required him among other things "to take possession of said assets and property and hold or dispose of them under the direction, supervision and further order of this Court." The order also required Medley, as Receiver, to mail a copy of the order of appointment "to each * * * creditor of Maryland Thrift Savings and Loan Company."

Prescott was appointed "as special counsel to aid him [Medley] in the performance of his duties as receiver." This Court in *Shillman et al. v. Hobstetter et al.*, 249 Md. 678, at page 687, *et seq.*, 241 A. 2d 570, 575 [1968], discussed at considerable length the doctrine of third party beneficiaries. We there pointed out that the intention of the parties to recognize a person or class as a primary party in interest as expressed in the language of the instrument and consideration of the surrounding circumstances as reflecting upon the parties' intention, are controlling factors in making the judgment whether there is or is not a class of persons meeting the definition of creditor beneficiary.

In the instant case, the order of appointment of Medley, Receiver, itself makes clear that all creditors of Maryland Thrift were third party beneficiaries. The order of appointment of Prescott by necessary implication bound him to those creditor beneficiaries.

Their acceptance of the duties thus imposed created conditions that gives Coppage standing to sue.

When the two receiverships began, Maryland Thrift was indebted to Security for $78,000.00, evidenced by two notes in the amounts of $40,000.00 and $38,000.00, and dated respectively January 9, 1962 and January 17, 1962. Both Medley and Prescott knew, or reasonably should have known this. This is the beacon fact, in the light of which the course of action followed by Medley and Prescott in distributing the assets of Maryland Thrift must be charted. Neither Medley nor Prescott has ever attempted to show that this obligation has been fully paid. Both contend merely that they were justified in the *belief* that it had been paid. The facts and circumstances relied upon by Medley to justify that belief were fully stated in *Coppage v. Maryland Thrift, supra.* They were rejected by us as justifying the course he followed.

Precisely the same facts and circumstances now are offered by Prescott with a single addition. He suggests that a telephone call to Peter Parker made after Medley had suggested inquiry be made about the difference between the amount of the book obligation of Maryland Thrift to Security ($78,000.00, plus interest) and the payments upon that obligation ($44,774.70 and $214.32) did provide the justification for such belief.

Prescott's testimony relating to that telephone conversation shows that the discussion was carried on in broad general terms, without specific reference to the fact that $78,000.00 appeared on the books of Maryland Thrift as the amount of its indebtedness to Security or to the existence of two notes evidencing the same. While it is true that Prescott expressed the belief that he did not know there were two notes, it plainly appears of record that he was signatory to two petitions prepared by him and submitted to the court in the receivership case, both of which recited a total indebtedness of $78,-000.00 evidenced by "notes" expressed in the plural.

Thus it is plain that Prescott, like Medley, knew or should have known that Maryland Thrift owed a continuing obligation to a preferred creditor (Security) when distribution was made to creditors of lower prior-

ity. The briefs of Medley and Prescott have one curious aspect. Each charges that improper distribution of the assets of Maryland Thrift was occasioned by neglect and default of the other. We believe that the default was joint.

We are not dealing with the respective rights of Medley and Prescott in individual claims against each other —where contributory negligence might prevent recovery by either. We have here instead an almost classic example of two persons united in combined default to another's harm.

Prescott is jointly liable to Coppage.

## Cross-Claim

Because we find Prescott personally liable in the original action, the judgment extended by the trial court under the cross-claim will be reversed.

## Limitations

Only Prescott suggests limitations as a bar to recovery by Coppage, although he interposed the defense in behalf of both himself and Medley. However, neither Medley nor Aetna pressed the contention below and have not here. In *Coppage v. Maryland Thrift, supra,* we pointed out that Coppage was not a party in the receivership case and had been given no notice of the receiver's partial distribution. We stated that the plain language of Rule BP4 c required due consideration of the Coppage claim at any time before an audit required by that rule was accomplished.

Thus, no cause of action by Coppage against Medley, Aetna or Prescott arose until his right to receive Maryland Thrift's proper share of the receivership assets had been judicially determined and its actual receipt had been prevented by their default. This action was filed well within the statutory limit therefore.

## Interest on the Judgment

In *Family Savings v. Stewart,* 241 Md. 89, 96-97, 215 A. 2d 726, 730 [1966], we held that a priority creditor, entitled to principal payments in full, was not entitled to post-receiver interest until shareholders (there recognized as junior creditors) had been paid the principal amount due. We there pointed out that "the equities of the situation fall heavily on the side of the savings share depositors."

*Coppage v. Coleman,* 263 Md. 639, 284 A. 2d 211 [1971], recognized the propriety of the allowance of interest to secured creditors in some circumstances but we there adopted the rationale of the United States Supreme Court in *Vanston v. Green,* 329 U. S. 156, 67 S. Ct. 237, 91 L. Ed. 162 (1946) in the quotation found at page 646 of our opinion: "Simple interest on secured claims accruing after the petition was filed was denied unless the security was worth more than the sum of principal and interest due. *Sexton v. Dreyfuss,* [219 U. S. 339]. To allow a secured creditor interest where his security was worth less than the value of his debt was thought to be inequitable to unsecured creditors."

In these proceedings there is no evidence legally sufficient to show that the security for Security's loan exceeded in value the principal and interest of its notes. Coppage had the burden to make such showing.

The suggestion of Coppage that the defendants should pay greater interest than Medley, Receiver, was obligated to pay, is unsupported by any cited authority; we have found none. It will not be allowed.

Medley had been appointed receiver for Maryland Thrift on August 2, 1962. Interest accordingly, will be terminated that date.

Following remand of our earlier decision in *Coppage, supra,* the Circuit Court for Montgomery County, on April 24, 1970, allowed the claim of Coppage. This is the date when Coppage would have received the amount

of Maryland Thrift's obligation to Security but for the default of the receiver and his counsel. It is from that date that we believe a recommencement of interest on the obligation should occur.

> *The judgment in favor of Coppage against Medley is modified to allow interest from January 9, 1962 to August 8, 1962, and thereafter from April 24, 1970, and as so modified, affirmed.*

> *The judgment in favor of Coppage against Aetna is modified to allow interest from January 9, 1962 to August 2, 1962 only, and thereafter from April 24, 1970, and as so modified, affirmed.*

> *The judgment in favor of the defendant Prescott in the original case is reversed with directions to enter judgment in favor of Coppage against him for $40,-000.00 with interest from January 9, 1962 to August 2, 1962 only, and thereafter from April 24, 1970.*

> *The judgment in favor of the cross-plaintiffs Medley and Aetna against the cross-defendant Prescott is reversed.*

> *All costs to be divided equally among Medley, Aetna and Prescott.*