## KEYBANK NATIONAL ASSOCIATION, Appellant–Plaintiff,

v.

## Grant F. SHIPLEY, Appellee– Defendant.

No. 02A03–0509–CV–440.

Court of Appeals of Indiana.

April 26, 2006.

See also 770 N.E.2d 369.

Steven L. Blakely, Acton & Snyder, LLP, Danville, for Appellant.

Cathleen M. Shrader, Barrett & McNagny, LLP, Fort Wayne, for Appellee.

**OPINION**

VAIDIK, Judge.

### Case Summary

KeyBank National Association ("Key-Bank") appeals the trial court's grant of summary judgment in favor of attorney Grant Shipley on its negligence claim. Specifically, KeyBank contends that Shipley, who was the attorney for a receiver, owed a duty to KeyBank, a creditor of the receivership. Although a receiver owes a duty to a creditor, Indiana courts have not yet addressed whether an attorney for a receiver owes a duty to a creditor. After analyzing our case law, the law of other states, and various public policies, we conclude that a receiver's attorney does not owe a duty to a creditor and therefore cannot be held liable for negligence. Instead, the creditor's remedy is to sue the receiver, which in turn can sue its attorney for malpractice. We therefore affirm the trial court.[1]

### Facts and Procedural History

This is the fourth appeal stemming from the receivership of Friction Material Company, Inc. ("FMCI"). The lengthy and complicated facts that underlie this appeal were set forth by this Court in *KeyBank National Ass'n v. Michael*, 737 N.E.2d 834 (Ind.Ct.App.2000) (*KeyBank I*), and we now summarize those facts here.

FMCI, a Delaware corporation with its operations in Huntington, Indiana, defaulted on a loan made by KeyBank. KeyBank had a first priority lien on most of FMCI's assets, including inventory, accounts receivable, equipment, and real estate. As a result of FMCI's default, KeyBank demanded immediate repayment of the outstanding balance of the loan ($891,776.08) plus interest and collection expenses. KeyBank then instituted proceedings in

---

1. We held oral argument in the Court of Appeals' courtroom on March 30, 2006. We commend counsel for their excellent presentations.

the Huntington Circuit Court requesting foreclosure of FMCI and the appointment of a receiver pursuant to Indiana Code § 34–38–1–1. The trial court scheduled a hearing for November 4, 1999.

On November 3, 1999, New Friction Material Company, Inc. ("New Friction"), as the purported successor by merger to FMCI, filed a petition for voluntary dissolution and appointment of a receiver pursuant to Indiana Code § 23–1–47–1. Also on November 3, the trial court held a hearing on the dissolution of New Friction without notice to KeyBank. New Friction had been incorporated "for the sole purpose of transferring FMCI's assets, in which KeyBank had security interests, to New Friction, [an] Indiana corporation, in order to voluntarily dissolve the corporation under the laws of Indiana." *KeyBank I*, 737 N.E.2d at 845. New Friction's articles of dissolution asserted that it was incorporated on November 2, 1999.

On November 3, 1999, the trial court granted New Friction's petition for dissolution, and the corporation was dissolved effective as of that date. The court concluded that New Friction's business and affairs should be wound up and liquidated in accordance with the relevant statutory provisions. The court also consolidated KeyBank's action with the action commenced by New Friction. A hearing was held on November 10, 1999, and two days later, the trial court ordered the appointment of a receiver pursuant to New Friction's request. The court appointed Stephen J. Michael as receiver, and Michael posted bond in the amount of $900,000.00. The court later granted Michael's application to employ Grant Shipley as attorney for the receiver. Shipley had appeared for New Friction and FMCI at various stages

of the proceedings. KeyBank, which was not consulted and did not approve of Shipley's appointment, petitioned the court to disqualify Shipley on grounds of conflict of interest. The court denied the motion.

In December 1999, the receiver filed a motion for leave to obtain secured credit, to grant a security interest in collateral, and to subordinate KeyBank's previous secured claims in favor of a new lender. In response, KeyBank: (1) challenged the validity of the merger between FMCI and New Friction; (2) argued that the trial court erred by denying KeyBank's petition for a receiver and by granting New Friction's petition for a receiver; (3) objected to the subordination of its claims; (4) petitioned the trial court to disqualify Shipley as counsel for the receiver on grounds of conflict of interest; and (5) challenged the payment of attorney fees and expenses to Shipley from the receivership estate. Thereafter, the trial court entered an order, which provided that: (1) there was a valid merger between FMCI and New Friction; (2) KeyBank was judicially estopped from challenging the appointment; (3) the receiver was allowed to obtain secured credit in an amount not to exceed $350,000.00 and to subordinate KeyBank's prior security interest; (4) there was no conflict of interest in Shipley's role as counsel for the receiver of New Friction; and (5) the receiver's application of payment for fees and expenses to Shipley was granted.

KeyBank sought an interlocutory appeal of the Huntington Circuit Court's order. On appeal, we held that the merger between FMCI and New Friction was not valid because New Friction had dissolved by the time the merger occurred [2] and that the trial court abused its discretion by

---

**2.** Specifically, the evidence shows that New Friction was dissolved on November 3, 1999, but the merger between FMCI and New Fric-

tion did not occur until November 10, 1999. *KeyBank I*, 737 N.E.2d at 845.

granting New Friction's petition for a receiver pursuant to Indiana Code § 23–1–47–1 and by failing to grant KeyBank's petition for a receiver pursuant to Indiana Code § 34–48–1–1. *Id.* at 845–847. We also held that the trial court erred by allowing the receiver to subordinate KeyBank's security interest in favor of a new lender without KeyBank's consent. *Id.* at 849–851. We concluded that Shipley, who had served as counsel for both FMCI and New Friction, had an inherent conflict in properly serving the interests of KeyBank on behalf of the receiver and was disqualified to serve as such. *Id.* at 851–53. Finally, we held that because Shipley was not qualified to serve as counsel for the receiver, he was without authority to act; therefore, we reversed the court's order granting payment of fees and expenses to Shipley and remanded the case for further proceedings consistent with our opinion. *Id.* at 853–54.

Pursuant to *KeyBank I*, the Huntington Circuit Court terminated the New Friction receivership in November 2000. Thereafter, the trial court appointed a receiver for FMCI.

The second appeal commenced when KeyBank filed a "Verified Petition for Writ in Aid of Appellate Jurisdiction and/or Writ of Mandate" in this Court. The facts underlying this petition are as follows. In August 2001, Shipley filed a "Motion to Correct Chronological Case Summary and Other Parts of the Record, Trial Rule 60(A)" in the Huntington Circuit Court. *KeyBank Nat'l Ass'n v. Michael*, 770 N.E.2d 369, 373 (Ind.Ct.App.2002), *trans. denied* ("*KeyBank II*"). In that motion,

Shipley acknowledged that he was formerly counsel for New Friction and the receiver and that he was "alleged" to be an attorney for FMCI. *Id.* He asked the trial court to correct its records to reflect that he had not acted as an attorney in any proceedings for FMCI. KeyBank opposed the motion,[3] but the trial court granted it. KeyBank then requested the trial court to certify its order for interlocutory appeal under Indiana Appellate Rule 14(B), but the trial court denied its request.

KeyBank then filed its petition for writ. On appeal, we held that the error Shipley sought to correct was one of substance and therefore not a proper subject of an Indiana Trial Rule 60(A) motion. *Id.* at 375. We also held that pursuant to the doctrine of res judicata, the trial court could not revisit the issue upon remand. *Id.* at 376. As such, we concluded that the trial court "acted contrary to our ruling on the merits of a contested issue" and granted KeyBank's motion to issue to the trial court a Writ in Aid of Appellate Jurisdiction with instructions to deny Shipley's motion to correct the CCS and to conduct future proceedings in a manner consistent with our appellate decisions. *Id.*

In November 2001, KeyBank filed a two-count complaint (which was amended in October 2002) against Shipley in Allen Superior Court. Count I alleged a claim of negligence, and Count II alleged a claim of conversion. Regarding the negligence claim, KeyBank alleged that Shipley owed a duty to KeyBank—as a known, secured creditor of the receivership estate—to act in an impartial and unbiased manner and

---

**3.** Specifically, KeyBank argued that the motion should be denied based upon the law of the case doctrine. In *KeyBank I*, Shipley filed a motion in this Court entitled "Motion for Leave to Seek Correction of Clerical Errors in the Chronological Case Summary." 737 N.E.2d at 840 n. 2. In the motion, Shipley asserted that certain portions of the CCS listed him as the attorney for FMCI and that such entries were erroneous and should be changed to reflect that he was acting as attorney for New Friction and the receiver. We denied the motion in footnote 2. *Id.*

to protect and preserve the assets of the receivership estate, including KeyBank's collateral.[4] As for the conversion claim, KeyBank alleged that Shipley had been paid over $70,000.00 in attorney fees and expenses from the receivership estate that he refused to return in violation of this Court's opinion in *KeyBank I*. In January 2003, Shipley filed a motion for summary judgment on several issues. A hearing was held on July 8, 2003. At the hearing, the trial court orally ruled on some of the issues and took the remainder of the issues under advisement. Specifically, one of the trial court's oral rulings concerned the repayment of attorney fees and return of them to the Huntington Circuit Court, and the trial court took under advisement whether Shipley owed a duty to KeyBank.

After no further ruling was received from the trial court, in September 2003 Shipley filed an Indiana Trial Rule 53.1 motion to withdraw submission of the case from the trial court. The trial court then issued a written summary judgment order, backdated to July 8, 2003, memorializing its earlier oral rulings. Thereafter, the Indiana Supreme Court appointed a special judge, and the special judge ultimately determined that the trial court's written summary judgment order was a proper nunc pro tunc order. Shipley sought an interlocutory appeal.

On appeal, Shipley first argued that the trial court erred in granting his motion for summary judgment on the issue of repayment of fees earned as attorney for the former receivership and by ordering Shipley to return the fees to the receivership pending in the Huntington Circuit Court. *Shipley v. KeyBank Nat'l Ass'n*, 821 N.E.2d 868, 878 (Ind.Ct.App.2005) (*KeyBank III*). We held that Shipley waived the issue for review because he invited it:

> In his summary judgment motion, Shipley raised the issue of the return of attorney fees and argued that the fees should not be returned to KeyBank but should be returned to the Huntington

---

**4.** Specifically, Count I alleges:

Shipley breached the duties he owed to KeyBank by representing the receiver even though he had previously represented FMCI and New Friction in the same matter; by engaging in a negligent pattern of conduct to frustrate and impair KeyBank's collateral; and by negligently advocating and advising the New Friction receiver to: (a) Act in a biased and partial manner by having the receiver make payments to general unsecured creditors with the proceeds of KeyBank's collateral to the detriment of KeyBank's priority secured interests in such proceeds; (b) Act in a biased and partial manner by hiring Shipley as the receiver's counsel and paying Shipley with the proceeds of KeyBank's collateral . . . ; (c) Act in a biased and partial manner by advocating the subordination of KeyBank's security interests, without KeyBank's consent, in favor of another lender or creditor, thereby causing diminution in the value of KeyBank's collateral; (d) Continue the operation of the failing business without the consent of the creditors, thereby causing a diminution in the value of KeyBank's collateral; (e) Infuse the failing company with the proceeds of the [sic] KeyBank's collateral to continue operation of the business, thus depriving KeyBank of the benefit of the assets, and the proceeds thereof, in which KeyBank held prior perfected first priority liens through the New Friction receiver's failed attempt to continue operation of the business; (f) Ignore the contractual obligations owed to KeyBank, and its priority lien rights that attached to the receivership estate . . . ; (g) Fail to preserve the receivership estate, including KeyBank's collateral and the proceeds thereof, during the pendency of KeyBank's appeal of the order appointing Stephen J. Michael as receiver of New Friction; and (h) Spend excessive amounts of money to finance litigation against KeyBank and defending the order appointing the receiver and the order appointing Shipley as the receiver's counsel . . . .

Appellant's App. p. 80–81 (formatting altered).

Circuit Court for it to determine to whom the fees should be distributed. The trial court did exactly as Shipley requested and ordered that Shipley return the fees to the Huntington Circuit Court for it to distribute. Thus, any error Shipley alleges to exist in the trial court's order requiring him to return the fees is invited error and not reviewable on appeal.

*Id.* at 879. Shipley also argued that the special judge abused his discretion by concluding that the trial court's written summary judgment order was properly entered as a nunc pro tunc order. We found no error on the part of the special judge. *Id.* at 880–883. The case was then remanded for resolution of the remaining summary judgment issues that were taken under advisement.

On August 19, 2005, the trial court entered the following order disposing of Key-Bank's negligence claim against Shipley:

> The court determines that due to the lack of privity between KeyBank and Shipley, no legal duty existed between Shipley and KeyBank that would give rise to a cause of action by KeyBank against Shipley for negligence. Therefore, the court determines that judgment should be entered in favor of Shipley on Count I of KeyBank's First Amended Complaint against Shipley.

Appellant's App. p. 20. KeyBank now appeals.

### Discussion and Decision

KeyBank contends that the trial court erred in entering summary judgment in favor of Shipley on its negligence claim on grounds that Shipley did not owe KeyBank a duty because there was no privity. When reviewing the propriety of a ruling on a motion for summary judgment, this Court applies the same standard as the trial court. *Sees v. Bank One, Indiana,*

*N.A.,* 839 N.E.2d 154, 160 (Ind.2005). A party seeking summary judgment must show "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C); *see also Sees,* 839 N.E.2d at 160. The review of a summary judgment motion is limited to those materials designated to the trial court. T.R. 56(H); *Sees,* 839 N.E.2d at 160. The court accepts as true those facts alleged by the nonmoving party, construes the evidence in favor of the nonmoving party, and resolves all doubts against the moving party. *Sees,* 839 N.E.2d at 160.

■ Ordinarily, summary judgment is inappropriate in negligence cases. *Kennedy v. Guess, Inc.,* 806 N.E.2d 776, 783 (Ind.2004), *reh'g denied.* Issues of duty, however, are questions of law for the court and may be appropriate for disposition by summary judgment. *Id.*

■ The sole issue on appeal is whether an attorney for a receiver owes a duty to the creditors of a receivership and therefore can be held liable for negligence. Both parties point out that this is an issue of first impression in this state. Although Indiana courts have not yet addressed whether a receiver's attorney owes a duty to the creditors, under Indiana law it is clear that a receiver owes a duty to the creditors. The Indiana Supreme Court has recently explained that a receiver is obligated to act in the interests of the creditors and to protect their interests. *ISP.com LLC v. Theising,* 805 N.E.2d 767, 772, 775 (Ind.2004), *reh'g denied.* And in *KeyBank I,* we explained the duties of a receiver:

> It is well established that when a court takes possession of the property of an insolvent corporation, and appoints a receiver, such receiver "is the arm of the court," by which it administers the trust

for the benefit of the creditors. But the court receives such property impressed with all existing rights and equities of creditors, and the relative rank of claims and the standing of liens remain unaffected by a receivership. Every legal and equitable lien upon the property of the corporation is preserved, with the power of enforcing it. And it is as much the duty of a receiver, in administering an estate, to protect valid preferences and priorities, as it is to make a just distribution among the general creditors. He is strictly the officer of the court, and it is his duty to so conduct the business that the interests of all persons shall be protected. He should not advocate the cause of one claimant against another. Between them he is indifferent, owing a like duty to all, and for that reason should, as far as possible, see to it that each has an equal opportunity to enforce his claim.

\*　　\*　　\*　　\*　　\*　　\*

A receiver, while acting for a court of conscience, must act impartially, and may not sequester the security of one creditor for the benefit of others who have no equity.

737 N.E.2d at 850 (quoting *Am. Trust & Sav. Bank v. McGettigan*, 152 Ind. 582, 52 N.E. 793, 795–96 (1899)).

It is evident that receivers play a special role as they are an arm of the court. Here, Michael was appointed by the trial court, posted a $900,000.00 bond, and agreed to faithfully discharge his duties, obey the orders of the court, and act "in the best interests of the shareholders and creditors." *See* Appellant's App. p. 465–68 (order appointing Michael as receiver). He was given sole and exclusive possession of the receivership estate and was the only one with the authority to act with respect to the estate. *Id.* He was also given the right to employ an attorney; he did so and selected Shipley. Given the special role and duties of receivers, it makes perfect sense that they owe a duty to all of the creditors. It therefore follows that they can be sued for negligence when they breach that duty. *See generally* 75 C.J.S. *Receivers* § 192 (2002) ("A receiver who acts outside his statutory authority or orders of the appointing court, or who is guilty of negligence or misconduct in the administration of the receivership, is personally liable for any loss resulting therefrom."); 65 Am.Jur.2d *Receivers* § 298 (2001) ("A receiver is personally liable for improper distribution of assets."). The fact that receivers must post a bond supports this proposition. KeyBank asks us, however, to extend this duty to the attorneys employed by receivers.

Specifically, KeyBank argues, "Given that a receiver can incur liability, both to creditors or to the corporation in receivership, it makes sense that his attorney should also incur liability especially where, as in this case, it is the attorney's advice and decision-making—purportedly rendered for the benefit of the creditor—that results in a creditor's damages." Appellant's Br. p. 8–9. In support of its argument, KeyBank points out that third-party beneficiaries to an attorney-client relationship may bring suit against an attorney for negligence. In essence, KeyBank alleges that it is a third-party beneficiary of the receiver and Shipley's relationship. KeyBank mainly relies on this Court's opinions in *Walker v. Lawson*, 514 N.E.2d 629 (Ind. Ct.App.1987), *adopted in part by* 526 N.E.2d 968 (Ind.1988),[5] and *Hermann v. Frey*, 537 N.E.2d 529 (Ind.Ct.App.1989).

---

**5.** This Court more recently analyzed *Walker* in *Beckom v. Quigley,* 824 N.E.2d 420, 425–27 (Ind.Ct.App.2005).

In *Walker*, we observed that the general rule was that "when a professional person negligently makes representations or gives advice, a plaintiff may recover only if there is privity of contract or if the negligent professional had actual knowledge that the plaintiff would be affected by the representations made." 514 N.E.2d at 632. We noted that there was an exception to this general rule that several jurisdictions had adopted, the third party beneficiary contract theory. "A third party beneficiary contract arises when the attorney and testator-client enter into an agreement with the intent to confer a direct benefit on the beneficiary under the will, allowing the third party to sue on the contract despite the lack of privity." *Id.* We articulated the reasoning behind this approach:

> The sole purpose of retaining the attorney is to benefit known third parties. This is the objective of the transaction. The rationale voiced by the courts is that if the beneficiaries are not permitted to recover for the loss resulting from the negligence, no one is able to do so. The estate is not harmed, except to the extent of attorney's fees paid. Unless the beneficiary can recover against the attorney, the social policy of preventing future harm is frustrated.

*Id.* at 633–34. We therefore adopted the third party beneficiary contract theory and held that "a professional owes a duty to a plaintiff when that professional knew that the services were to be rendered for the benefit of the third party to the transaction." *Id.* at 633. However, we cautioned:

> Our agreement with the majority of jurisdictions allowing an intended beneficiary to maintain a cause of action against a negligent lawyer does not mean a lawyer is liable to the entire world for professional incompetence, but

it does mean that *in the narrow circumstances of this case,* ordinary principles of negligence apply to create a cause of action for malpractice for the known intended beneficiaries of a testamentary scheme.

*Id.* at 634 (emphasis added) (internal citation omitted).

In *Hermann*, we relied on *Walker* for the proposition that "[p]rivity is no longer a requirement in suits against attorneys by third party beneficiaries." 537 N.E.2d at 531. We reiterated that a third party beneficiary contract arises when two parties enter into an agreement with the intent to confer a direct benefit on a third party, allowing the third party to sue on the contract despite the lack of privity. *Id.* We therefore held that the attorney owed a duty to the only heir of the decedent's will who had retained the attorney to represent her husband's estate in a malpractice action. *Id.*

After analyzing *Walker* and *Hermann*, we find that the privity exception set forth in those cases simply does not apply here. Shipley and the receiver did not enter into an agreement with the intent to confer a direct benefit on KeyBank. In fact, Michael, as receiver, owed a duty to all of the creditors, not just to KeyBank. As we explained in *KeyBank I*, a receiver's duty is to protect the interests of all persons and not to advocate the cause of one claimant against another. 737 N.E.2d at 850. In addition, the rationale behind the privity exception found in *Walker* is that the beneficiary has no one to recover against for negligence, which is an important social policy. 514 N.E.2d at 633–34. As we explained above, receivers owe a duty to creditors and even post bonds; therefore, creditors can pursue negligence claims against receivers.[6]

---

6. In fact, both parties acknowledged at oral    argument that KeyBank filed a lawsuit

Nevertheless, KeyBank argues that although no Indiana decision has specifically addressed whether a creditor may hold a receiver's attorney liable for negligence, one state has: Maryland. The Court of Appeals of Maryland found that an attorney for a receiver was liable to a creditor in the case of *Prescott v. Coppage*, 266 Md. 562, 296 A.2d 150 (1972). In *Prescott*, the trial court appointed Medley as receiver. The trial court also appointed Prescott as attorney for the receiver. Coppage was a creditor of the receivership. The court held:

> The trial court, incorrectly, we think, gave judgment in the original case to Prescott. He did so upon the ground that there was a lack of privity between Coppage and Prescott, and that the case did not fall within the facts and circumstances giving rise to a right to Coppage as a third party beneficiary. We believe that Coppage did stand in the position of a third party beneficiary under the facts and circumstances here existing.
>
> In the receivership case Medley was appointed receiver by an order of the Circuit Court for Montgomery County, that required him among other things "to take possession of said assets and property and hold or dispose of them under the direction, supervision and further order of this Court." The order also required Medley, as Receiver, to mail a copy of the order of appointment "to each ... creditor of Maryland Thrift Savings and Loan Company."
>
> Prescott was appointed "as special counsel to aid him (Medley) in the performance of his duties as receiver." This Court in *Shillman et al. v. Hobstetter et al.*, 249 Md. 678, at page 687 et seq., 241 A.2d 570, 575 (1968), discussed at considerable length the doctrine of third party beneficiaries. We there pointed out that the intention of the parties to recognize a person or class as a primary party in interest as expressed in the language of the instrument and consideration of the surrounding circumstances as reflecting upon the parties' intention, are controlling factors in making the judgment whether there is or is not a class of persons meeting the definition of creditor beneficiary.
>
> In the instant case, the order of appointment of Medley, Receiver, itself makes clear that all creditors of Maryland Thrift were third party beneficiaries. The order of appointment of Prescott by necessary implication bound him to those creditor beneficiaries.
>
> Their acceptance of the duties thus imposed created conditions that gives Coppage standing to sue.

*Id.* at 156. The court therefore held that "Prescott is jointly liable to Coppage." *Id.* at 157.

The Court of Appeals of Maryland revisited *Prescott* in *Ferguson v. Cramer*, 349 Md. 760, 709 A.2d 1279 (1998). In *Ferguson*, the issue was whether a beneficiary under a will could maintain a cause of action for malpractice against an attorney retained by the personal representative of the testator's estate. The beneficiary argued that it could sue the personal representative's attorney pursuant to *Prescott*. In discussing *Prescott*, the *Ferguson* court noted that its third-party beneficiary exception was a limited exception to the strict privity rule. *Id.* at 1282. The court also noted that *Prescott* was limited in scope because the trial court appointed the attorney to aid the receiver in his duties; therefore, the attorney owed a duty to the court as well as to any beneficiaries the court intended to benefit. *Id.* at 1283. The court added that the duties of a re-

against Michael and that it has been settled.

ceiver are clearly distinguishable from the duties of a personal representative and that courts are involved in receiverships but not in the administration of estates, both of which militated against extending *Prescott* to that area of the law. In holding that the beneficiary could not sue the personal representative's attorney, the court acknowledged that the beneficiary was not left without a remedy because it could sue the personal representative. *Id.* at 1285. That is, a personal representative owes the beneficiaries under a will a duty to act in the best interests of the estate, and where the personal representative's conduct falls below the standard of care, the beneficiaries may sue the personal representative for breach of fiduciary duty. *Id.* "By directing estate beneficiaries to file suit against the personal representative for breach of fiduciary duty, we properly place the emphasis of estate decisionmaking upon the correct individual—the personal representative." *Id.* (quotation omitted). The personal representative, in turn, could sue its attorney for malpractice. *Id.*

More recently, the court in *In re American Bridge Products, Inc.*, 328 B.R. 274, 353 (Bkrtcy.D.Mass.2005), stated that it could find just one case involving a claim of negligence on the part of counsel to a receiver, namely "*Prescott v. Coppage*, 266 Md. 562, 296 A.2d 150 (1972)." The court went on to distinguish *Prescott* based on the fact that the creditor's receivers were diverse. *Id.*

After examining Maryland law, it becomes apparent that *Prescott* is a limited exception to the privity rule and, by its own facts, only applies when the trial court appoints the attorney for the receiver. Unlike *Prescott*, here the trial court did not appoint Shipley; rather, Michael selected Shipley, and the trial court approved it.[7] In addition, it appears that no other state has held that a receiver's attorney can be held liable for negligence to a creditor of a receivership.[8]

■ Given the limited application of *Prescott* and the fact that no other state has followed suit, we decline to expand the privity exception in *Walker* and *Hermann*,

7. In its brief, KeyBank asserts that the trial court appointed Shipley as attorney for the receiver, presumably to fall within the ambit of *Prescott*. However, it is clear from the record that the trial court did not appoint Shipley but rather authorized the employment of Shipley, whom the receiver had selected. *See* Appellant's App. p. 427 (Order Authorizing Employment of Counsel).

8. The America Law Reports address what constitutes negligence sufficient to render an attorney liable to a person other than the immediate client. There is a section that specifically addresses whether "[a]n attorney for a debtor's bankruptcy receiver who was jointly at fault with the receiver in allowing distribution of the debtor's assets to creditors of a lower priority was held liable to the receiver of an institution which was a higher priority creditor." *See* Joan Teshima, Annotation, What Constitutes Negligence Sufficient to Render Attorney Liable to Person Other Than

Immediate Client, 61 A.L.R.4th 464 § 36 (1988 and Supp.2005). This section lists only two cases, *Prescott* and *Clement v. Prestwich* 114 Ill.App.3d 479, 70 Ill.Dec. 161, 448 N.E.2d 1039 (1983). *Clement*, in turn, distinguished the case of *Pelham v. Griesheimer*, 92 Ill.2d 13, 64 Ill.Dec. 544, 440 N.E.2d 96 (1982), which held that "a nonclient could maintain a cause of action only if he were able to prove that 'the primary purpose and intent of the attorney-client relationship itself was to benefit or influence the third party.'" *Clement*, 70 Ill.Dec. 161, 448 N.E.2d at 1042 (citing *Pelham*, 92 Ill.2d 13, 64 Ill.Dec. 544, 440 N.E.2d 96). The *Clement* court thus concluded, "It is clear that plaintiff [injured in automobile accident] was not the intended beneficiary of the attorney-client relationship between defendant [King's attorney] and King [tortfeasor] since the purpose of that relationship was to achieve the discharge of King's debts, including her debt to plaintiff, in bankruptcy." *Id.*

which only applies where an attorney enters into an agreement with the intent to confer a direct benefit on a third party, to this case. A receiver owes a duty to all creditors, not to one in particular. Given this duty, Shipley did not intend to confer a direct benefit on KeyBank, who was only one of the creditors. Moreover, unlike *Walker* and *Hermann,* here KeyBank was not left without a remedy. KeyBank could have sued Michael, whose actions were secured by a bond.[9] Michael, in turn, could have sued Shipley for malpractice. We therefore choose not to expand *Walker* and *Hermann*'s privity exception any farther, for there are important public policy reasons to keep the privity requirement intact. As one commentator has observed:

> The citadel of privity is under grave attack. The potency of attack is rooted in modern tort law's goal of providing maximum recovery to injured parties and placing the risk of loss among those thought to be most able to bear the cost. However, the attack on privity threatens to impose upon the attorney more than just increased exposure to liability; he or she increasingly faces a real ethical dilemma.

> When lawyers must be conce[r]ned about their potential liability to third parties, the resultant self-protective tendencies may deter vigorous representation of the client. Attention to third-party risk might cause the attorney improperly to consider "personal interests" or "the desires of third parties" above the client's interests. This would contravene the lawyer's duty of loyalty to the client.

Jack I. Samet et al., *The Attack on the Citadel of Privity,* 20 A.B.A. Winter Brief 9, 40 (1991) (footnotes omitted). The commentator added that "[t]he unavoidable tension between these ethical standards on the one hand, and the fear of exposure to malpractice liability to non-clients on the other, is an issue that must be confronted and dealt with squarely even in the heat of battle in the inexorable attack on privity." *Id.*

In light of the above, we affirm the trial court's grant of summary judgment to Shipley.

Affirmed.

BAKER, J., and MATHIAS, J., concur.

---

9. As noted above, this is exactly what occurred here. See note 6, *supra.*