**KEYBANK NATIONAL ASSO- CIATION, Appellant–Re- spondent–Plaintiff,**

v.

**Stephen J. MICHAEL, as receiver for New Friction Material Company, Inc., Appellee–Petitioner,**

**and**

**Friction Material Company, Inc., A Delaware Corporation, Appellee–Defendant.**

**No. 35A05–9912–CV–541.**

Court of Appeals of Indiana.

Oct. 31, 2000.

Robert W. Eherenman, Charles J. Heiny, Melanie L. Farr, Haller & Colvin, P.C., Fort Wayne, Indiana, Attorneys for Appellant.

Grant F. Shipley, Shipley & Associates, Fort Wayne, Indiana, Attorney for Appellees.

**OPINION**

FRIEDLANDER, Judge

KeyBank National Association (Key-Bank) appeals from the denial of its petition for foreclosure of a real estate mortgage, foreclosure of security interests in collateral, and the appointment of a receiver after Friction Material Company, Inc. (FMCI), a Delaware corporation and the predecessor to New Friction Material Company, Inc. (New Friction), defaulted on loans made by KeyBank. The following restated issues are presented for review:

1. Did the trial court err by finding that New Friction validly merged with FMCI and by entertaining New Friction's petition for appointment of a receiver?

2. Did the trial court err as a matter of law by failing to appoint a receiver over FMCI pursuant to KeyBank's request for foreclosure and the appointment of a receiver?

3. Did the trial court err by allowing the receiver to subordinate Key-Bank's security interests in favor of new lenders in order to resume the operation of the business?

4. Did the trial court err by denying KeyBank's objection to the receiver's attorney and by awarding expenses and fees to the receiver and the attorney from assets that constitute KeyBank's collateral?

5. Did the trial court err by denying KeyBank's motion for a change of judge?

We affirm in part, and reverse in part.

The facts disclose that FMCI, a Delaware corporation, manufactured asbestos and nonasbestos friction products including: clutch facings, brake blocks, brake linings, and industrial products. As of October 1999, FMCI focused on nonasbestos products. FMCI operated exclusively in Huntington, Indiana. FMCI was, at the time of these proceedings, the only manufacturer of clutch facings in the United States. FMCI was one of only five or six major manufacturers of brake blocks in the United States.

KeyBank[1] and FMCI executed a revolving credit loan agreement in June 1996. The agreement provided a maximum of $1,950,000 as a revolving line of credit. The loan agreement continued an earlier agreement that contained a security agreement providing KeyBank with a security interest in all of FMCI's property, accounts receivable, inventory, machinery, and equipment, as well as "all replacements, accessions, substitutions, additions, products and proceeds, including insurance proceeds." *Record* at 22. In November 1997, the loan agreement was modified. FMCI's line of credit was reduced to $1,350,000. As additional security, a real estate mortgage was executed by FMCI in favor of KeyBank.

---

1. KeyBank was known as Society Bank when the parties' relationship commenced.

The loan agreement terminated in June 1999 and all amounts owed by FMCI became due and payable. FMCI was in default and did not pay all of the obligations. KeyBank and FMCI restructured the obligations. KeyBank and FMCI executed a loan workout agreement in August 1999. The Amended and Restated Revolving Credit Note executed with the loan workout agreement provided, *inter alia:*

> This Amended Note and every other obligation, indebtedness, and liability of Borrower to Bank, whether joint or several, absolute or contingent, due or to become due, and whether heretofore or hereafter contracted or existing and in whatsoever manner acquired by or accruing to Bank, whether before or after maturity and whether the same may have been or shall be participated (sic), in whole or in part to others, and including all amendments, extensions, and renewals thereof (all herein called "Obligations"), are secured as set forth in the Agreements [the previous notes and modifications executed between the parties].

*Record* at 103. The mortgage was amended to reflect the note executed with the loan workout agreement.

The loan workout agreement provided, *inter alia,* that: 1) FMCI was not, at the time of execution of the agreement, delinquent in any tax obligations, 2) FMCI would use a cash management service known as a lockbox, which was a post office box controlled by KeyBank, to which FMCI directed its accounts receivable, 3) FMCI could not include inventory in its borrowing base to which it did not have an absolute right to payment, *e.g.,* consigned inventory and inventory that was pre-billed but had not been shipped, 4) FMCI would maintain its debt-to-asset ratio such that FMCI did not have current liabilities in an amount that exceeded assets by more than $426,000.

In October 1999, KeyBank vice-president George Keely notified Robert Scott,

FMCI's president, that FMCI had violated provisions of the workout agreement. The letter from Keely to Scott stated that, based upon the default, KeyBank accelerated the loan obligations. The letter demanded immediate repayment of the outstanding balance of $891,776.08, together with interest and collection expenses. KeyBank then instituted proceedings requesting foreclosure and the appointment of a receiver pursuant to Ind.Code Ann. § 34–48–1–1 (West 1999). The court scheduled a hearing on the request for a receiver for November 4, 1999.

On November 3, 1999, New Friction, as the purported successor by merger to FMCI, filed its petition for voluntary dissolution and for appointment of a receiver pursuant to Ind.Code Ann. § 23–1–47–1 (West 1989). Also on November 3, 1999, a hearing on the dissolution of New Friction was held without notice to KeyBank. New Friction asserted that it had been incorporated "for the sole purpose of acquiring all assets and obligations of Friction Material Company, Inc., thereby domesticating its assets and operations and thus authorizing the initiation of a voluntary dissolution by court proceeding under IC 23–1–47–1(4)." *Record* at 135. New Friction's articles of dissolution asserted that New Friction was incorporated on November 2, 1999. New Friction requested the appointment of a receiver to liquidate the business.

On November 3, 1999, the trial court granted New Friction's petition for dissolution. In part, the court's order states:

> [T]he Court further determines that no hearing is necessary to determine whether grounds for a judicial dissolution exists (sic) (since the Court has taken judicial notice of the filing of this petition), it is therefore
>
> ORDERED, that the petition for dissolution of New Friction Material Company, Inc. an Indiana Corporation, is granted, and the Corporation is dissolved effective November 3, 1999.

FURTHER ORDERED, THAT THE clerk of this Court shall deliver a copy of this Order to the Indiana Secretary of State.

The Court further finds and concludes that the Corporation's business and affairs should be wound up and liquidated in accordance with IC 23-1-47-1 et seq., IC 23-1-45-5 and IC 6-8.1-10-9.

*Record* at 147.

The trial court consolidated KeyBank's action with the action commenced by New Friction. A hearing was held on November 10, 1999. On November 12, 1999, the trial court ordered the appointment of a receiver pursuant to New Friction's request. The order appointed Stephen J. Michael as receiver. The trial court granted the receiver's application to employ Grant Shipley as attorney for the receiver. Shipley had appeared for New Friction and FMCI at various stages of the proceedings.[2]

On November 16, 1999, KeyBank moved for a change of judge. The motion was denied on November 17, 1999. On November 22, 1999, KeyBank filed its praecipe for the record.

On December 3, 1999, the receiver filed a motion for leave to obtain secured credit, to grant a security interest in collateral, and to subordinate KeyBank's previous secured claims in favor of a new lender. KeyBank objected to subordination of its claims. KeyBank, *inter alia*, moved for disqualification of the counsel for the receiver and moved to stay the proceedings to allow KeyBank to pursue an interlocutory appeal.[3] On December 21, 1999, the trial court entered an order allowing the receiver to obtain secured credit in an amount not to exceed $350,000 and to subordinate KeyBank's prior security interest in order to resume business operations.

On January 5, 2000, the trial court entered findings of fact and conclusions of law based upon the evidence presented at the hearings on November 7, 1999, November 10, 1999, December 7, 1999, and December 21, 1999.[4] In pertinent part, the trial court stated:

21. At the close of all the evidence and argument on November 10, 1999, the Court announced from the bench that it would grant the motion of New Friction ... for a receiver with expanded authority as allowed under IC 23-1-47-1(4), so as to permit operations to resume pending sale of the business as a going concern.

22. At the time of the trial, it was the Court's factual conclusion (which remains the Court's conclusion today) that a receiver with expanded authority as authorized under the corporate dissolution laws would be in a position to operate the business, market the company as a going concern, realize best value for the assets, and hold open the possibility of retaining employment and operations in Indiana. Mr. Scott had explained that most of the competition facing [FMCI] now comes from overseas, and that [FMCI] was the last American manufacturer of clutch facings.

23. It was then and remains today, the factual conclusion of this Court that the appointment of a receiver was and is

---

2. On May 16, 2000, Grant Shipley, as counsel for the receiver, filed with this court a motion entitled "Motion for Leave to Seek Correction of Clerical Errors in the Chronological Case Summary." In the motion, Shipley asserted that the portions of the Chronological Case Summary (CCS) that list him as the attorney for FMCI are erroneous and should be altered to reflect that he was acting as attorney for New Friction and the receiver. For reasons more fully developed in Issue No. 4, the motion is denied.

3. Ind. Appellate Rule 4(B)(3) allows interlocutory appeals as a matter of right from orders granting or refusing to grant a receiver.

4. The CCS contains an entry for the hearing that occurred on December 21, 1999. The record of proceedings does not contain a transcript of that hearing.

necessary to secure ample justice to all parties.

24. At trial, KeyBank ... opposed appointment of receiver upon the grounds that, supposedly, the Delaware Secretary of State had certified that its office had not received notice that [FMCI] was merging into New Friction ... (see Response filed November 10, 1999). At the trial, New Friction ... tendered a facsimile certification (which this Court allowed to be substituted afterwards for the original certification) from the Delaware Secretary of State evidencing the merger between [FMCI] and New Friction.... Based upon the certification, of which the Court now takes judicial notice, the Court is satisfied that all procedures necessary to effectuate the merger of [FMCI] into New Friction ... have been undertaken in accordance with Delaware law.

25. Concerning questions about the representation of New Friction ... and the Receiver by Attorney Grant Shipley, the Court notes that [FMCI] was and is represented in this Court by Attorney Robert S. Garrett, of Huntington, Indiana, whereas Grant F. Shipley, of Fort Wayne, Indiana, has represented New Friction ... in its extremely limited existence. As was explained at trial, the sole purpose of New Friction ... is to liquidate under judicial supervision, whether through the offices of a receiver or directly under supervision of this Court. Mr. Shipley, having appeared for New Friction ... for the sole purpose of placing it in dissolution, was thereafter retained by the Receiver, Stephen J. Michael (himself an attorney in Huntington, Indiana). The Court does not discern any conflict of interest to exist between New Friction ... and Stephen J. Michael, Receiver, or between New Friction and Mr. Shipley. The Court notes that the authority of New Friction ... to act at all is suspended while a Receiver is in place, and if the Receiver is suspended pending appeal, then New Friction ... resumes the liquidation (but not the custodianship) as part of the winding up of corporate affairs. At no time can New Friction ... and the Receiver act simultaneously, and both entities remain directly under the control of this Court pursuant to IC 23–1–47–1 et seq.

26. With response to the objections of KeyBank ... to the receiver's application to pay interim fees and expenses of counsel, the Court would note that counsel for the Receiver has submitted detailed, itemized statements (which include sufficient detail that these statements have been placed under seal so as not to inadvertently disclose attorney-client communications and attorney's work product), and the Court having reviewed said detailed itemization is satisfied that the amounts requested are reasonable, the services rendered are appropriate, and the results obtained are certainly satisfactory to this Court—within the limits of counsel's ability to bring about a successful resolution of the matters at hand.

27. The new Three Hundred Fifty Thousand Dollar ($350,000) operating loan requested by the Receiver to resume operations is reasonable and reflects nothing more than the resumption of total operating debt which KeyBank ... agreed to in August of 1999. The Court concludes that, in the absence of a new operating loan, customers will remove their tooling from the New Friction ... plant and will send their business elsewhere, that goodwill will evaporate, that customer and vendor relations will dissolve, and all the receiver will have is tangible assets to sell at liquidation and not a thriving business. The Court believed then and believes now that the harm to creditors, employees, and the Huntington community at large will be substantial if operations cannot resume.

28. KeyBank ... has requested a stay pending appeal. The Bank has

filed a Notice of Appeal, following the filing of a praecipe, and apparently intends to appeal the orders entered in this Case appointing a receiver, the Court's overruling of the belated motion for change of venue from the judge, the order of appointment of counsel for the Receiver, the order allowing compensation to the Receiver's counsel, and such other orders at the Bank may choose to appeal.

29. KeyBank ... asserts that it is a party aggrieved by the appointment of a receiver, within the meaning of IC 34–48–1–10(a). This Court cannot so find. KeyBank ... requested the appointment of a receiver, and there was never any doubt but that a receiver would be appointed in light of New Friction ... also requesting the appointment of a receiver.

30. As a factual matter, this Court believes that KeyBank ... is judicially estopped from challenging the appointment of a receiver, where it itself had requested a receiver. If, in retrospect, there was error in appointing a receiver, it was invited error.

31. The Court has previously required the Receiver to post a bond in the amount of Nine Hundred Thousand Dollars ($900,000), which this Court has examined and approved.

32. KeyBank['s] ... litigiousness and desire to appeal order after order has made it difficult if not impossible for the receivership to resume operations and act as custodian as this Court had anticipated. Because posting of a bond by KeyBank ... suspends the authority of the Receiver under IC 34–48–1–10(b), it is imperative that KeyBank determine whether it will thus totally disrupt the receivership by "suspending" the Receiver, as soon as possible. Nothing in these findings of fact should indicate the Court's concurrence with any of the appeal issues suggested by KeyBank....

*Conclusions of Law*

* * *

7. The Receiver has indicated that it is necessary to obtain an operating loan not to exceed Three Hundred Fifty Thousand Dollars ($350,000), secured by the assets of the Receivership, in order to resume operations. By resuming operations, the Receiver would generate new accounts receivable thus replenishing the collateral base for the Bank while at the same time maintaining the customer base and thus the goodwill of New Friction.... Without [the] new loan, the goodwill ... depreciates rapidly as customers move their orders to other manufacturers, with the result that the value of the company itself declines rapidly.

8. In a business receivership, this Court may authorize the receiver to borrow money to undertake operations, and may direct that such a loan shall be secured by a first lien on the receivership assets. [*Blythe v. Gibbons*, 141 Ind. 332, 35 N.E. 557 (1893).] * * *

9. It is essential that any new lender be given a first priority in repayment, and not be placed along with the general creditors: "No financier in his senses would lend money to carry on the business of a failing and insolvent partnership for the purpose of making the most out of the assets of the firm for the benefit of the general creditors, if the repayment of his loans were to be placed on a common level with the claims of general creditors, and not to be made a preferred claim." *Id.*

10. KeyBank objects that granting a first secured lien to a new lender will somehow impair their collateral rights. But KeyBank ... has chosen to impair the value of its own collateral by insisting on forced liquidation of the company which, until KeyBank ... cut off its available credit, was employing ninety (90) employees ... and had 1998 gross revenues of 7.5 million Dollars.... So long as the Bank's declared strategy is

to forcefully liquidate the assets of the company, then the Receiver satisfies his duties towards the Bank by preserving that liquidation value. The purpose of the new loan is not to impair that value but, rather, to enhance that value by generating new accounts receivable and maintaining the going concern value of the business until it can be sold as a going concern.

11. KeyBank ... seemingly objects to paying the Receiver or the Receiver's counsel for the basic services in maintaining the Bank's collateral, establishing a claims docket, and performing basic administrative tasks of the receivership. But KeyBank ... has requested a receiver, albeit not necessarily the receiver this Court has selected. * * * [Conclusions 12, 13, and 14 provide that KeyBank requested a receiver and either invited the error or is judicially estopped from complaining of any error as to the appointment of the receiver.]

15. Turning to the continued objection to the Court's refusal to grant a motion for change of venue from the judge, ....

16. As note[d] in the Findings of Fact, on November 4, 1999, trial on the issue of receivership was orally set for November 10, 1999 at 2:00 p.m., in the presence of counsel for KeyBank ... and New Friction.... Notice of this setting was promptly sent to all counsel, and the trial setting was promptly entered on the [CCS]. Under Ind.T.R. 76(C)(5) it was incumbent upon Key-Bank to object to the trial setting and to file its motion for change of judge within three days, which (excluding intervening weekend days) would have been November 9, 1999. No objection having been timely filed, this Court proceeded to trial on November 10, 1999. Only after this Court had heard the evidence and rendered its decision, KeyBank ... (on November 16, 1999) filed its motion for change of judge. By virtue of Trial Rule 76(C)(5), however, that motion came too late, since the right to seek change of venue from the judge had by then been waived.

* * *

18. Concerning the motion of Key-Bank ... to disqualify counsel for the receiver, the Court notes that the above-captioned case was initiated as a proceeding for voluntary dissolution under judicial supervision, IC 23–1–47–1. This Court has entered a decree of dissolution, which KeyBank apparently is not objecting to. Under IC 23–1–47–4, "After entering the decree of dissolution, the court shall direct the winding up and liquidation of the corporation's business and affairs ... and the notification of claimants."

19. In connection with the dissolution of the corporation, the court "may appoint one (1) or more receivers to wind up and liquidate, or one (1) or more custodians to manage, the business and affairs of the corporation." IC 23–1–47–3. The distinction is that the corporation, without intervention of a receivership, must liquidate under judicial supervision; if a receiver is appointed, the receiver may liquidate or may serve as custodian to manage the affairs of the business (for example, to maintain the going concern value while a purchaser for the on-going business is sought). So long as the receiver is authorized to act as custodian, the receiver "may exercise all of the powers of the corporation, through or in place of its board of directors or officers." IC 23–1–47–3(c)(2).

20. This Court fails to see how there can be any conflict of interest between New Friction ... in dissolution, and Stephen J. Michael as Receiver, or between New Friction and Mr. Shipley. New Friction ... came into existence for the sole purpose of seeking judicial dissolution and appointment of the receiver. Its entire corporate powers are exercised by and through the receiver whom this Court has appointed. It is

not as if there are two clients represented by the same attorney; rather, the receiver has succeeded to all rights, powers and interests of New Friction.... New Friction ... simply has no separate existence at this point, apart from the Receivership. There is, thus, no dual representation as alleged by KeyBank ... in its Motion filed December 7, 1999.

21. Finally, KeyBank ... has petitioned this Court to stay its orders relating to the appointment of a receiver, pending appeal of various orders to the Indiana Court of Appeals. Although this Court is uncertain which orders will be appealed from, it is apparent that the orders complained of are those relating to the receivership itself and not to the corporate dissolution. And while this Court gravely doubts that KeyBank is a "party aggrieved" within the meaning of IC 34–48–1–10(a), this Court must necessarily give KeyBank ... the opportunity to demonstrate the merits of its appeal to the Indiana Court of Appeals.

\* \* \*

23. This Court has previously ordered the Receiver to post a bond in the amount of Nine Hundred Thousand Dollars ($900,000). By virtue of IC 34–48–1–10, a "stay" will be granted, in the sense that the authority for the receiver will be suspended, upon the filing with this Court by KeyBank ... of a bond in the amount of Nine Hundred Thousand Dollars ($900,000), with sufficient surety, conditioned upon the prosecution of the appeal, all as required by IC 34–48–1–10.

24. Because the pendency of the notice of appeal has itself created substantial uncertainty as to whether the Receiver's authority will be suspended, thus creating uncertainty as to whether on-going operations at the plant will be suddenly terminated upon posting of the bond by KeyBank ..., it is essential that KeyBank ... determine whether or not it will post the required bond; for if the Receiver's authority is suspended, then the Receiver cannot obtain an operating loan to re-open the plant and resume production, and of necessity New Friction ... under judicial supervision must proceed with the liquidation of assets.

25. Accordingly, the Court concludes that as a matter of fairness and equity KeyBank ... should be given ten (10) days from the date of this Order within which to post its appeal-bond as permitted under IC 34–48–1–10(b), else the Receiver's efforts and expenditures in seeking to resume operations may prove to be utterly wasted by the belated filing of an appeal-bond therefore suspending all efforts at maintaining operations.

*ORDER*

In consideration of the foregoing, it is now therefore

ORDERED, that KeyBank['s] ... motion to disqualify counsel for the Receiver is overruled; its "preliminary opposition" filed December 7, 1999 (treated as a motion to correct error) is overruled as to the Receiver's motion for leave to obtain secured credit, the Receiver's application to pay interim fees and expenses of counsel, and the Court's previous Order overruling the motion of KeyBank for change of venue from the judge.

\* \* \*

*Record* at 372–85.

1.

■ KeyBank alleges that the trial court erred in finding that FMCI successfully merged with New Friction and by entertaining New Friction's petition for appointment of a receiver.

KeyBank initiated proceedings requesting foreclosure and the appointment of a receiver over FMCI, pursuant to Ind.Code Ann. § 34–48–1–1 (West 1999). FMCI did

not file an answer.[5] FMCI initiated other proceedings. FMCI, a Delaware corporation, purportedly merged with a newly formed Indiana corporation, New Friction. The merger was for the sole purpose of transferring FMCI's assets, in which KeyBank had security interests, to New Friction, the Indiana corporation, in order to voluntarily dissolve the corporation under the laws of Indiana.

KeyBank contends that FMCI failed to accomplish the merger with New Friction before New Friction was dissolved. New Friction's articles of dissolution recite that it was incorporated on November 2, 1999. New Friction was granted a corporate dissolution on November 3, 1999. New Friction obtained a certificate of merger in Delaware on November 10, 1999. FMCI, a Delaware corporation, could not merge with New Friction, an Indiana corporation, on November 10, 1999 because New Friction had been dissolved on November 3, 1999.

Under Delaware law, a corporate merger with a foreign corporation becomes effective when "adopted, approved, certified, executed and acknowledged by each of the constituent corporations in accordance with the laws under which it is formed," Del.Code Ann. tit. 8, 252(c) (West 1999), and is evidenced by an agreement of merger or a certificate of merger filed with the Secretary of State. *See* Del.Code Ann. tit. 8, § 251(d) (providing the method for a merger); Del.Code Ann. tit. 8, § 103(d) (providing that corporate instruments are effective upon the filing date). Under Indiana law, "[a] corporation is dissolved upon the effective date of its articles of dissolution." Ind.Code Ann. § 23–1–45–3(b) (West 1989). Accordingly, an effec-

tive merger depended on satisfying the laws of both Indiana and Delaware.

 "A dissolved corporation continues its corporate existence but may not carry on any business except that appropriate to wind up and liquidate its business and affairs...." IC § 23–1–45–5(a). A dissolved corporation cannot acquire new assets or new liabilities. *Cf. In re Liquidation of Bourbon Banking Co.*, 218 Ind. 96, 30 N.E.2d 311, 317–18 (1940) (in discussing the authority of a receiver appointed to liquidate a bank, the court noted "[n]ew business that is not incidental to the closing of the bank's affairs is not contemplated but a complete closing out of its affairs is contemplated"), *modified on other grounds* 218 Ind. 96, 31 N.E.2d 52 (1941); *Kratky v. Andrews*, 224 Minn. 386, 28 N.W.2d 624, 627–28 (1947) (under Delaware law, a corporation with an expired charter existed to wind up its affairs but could not accept an assignment or operate for the purpose for which it was incorporated). Thus, obtaining another corporation's assets and merging to become the existing corporation is not contemplated as an activity appropriate to winding up and liquidating a business.

The Delaware Secretary of State issued a certificate of merger on November 10, 1999. Under Delaware laws the merger became effective on the date that the certificate was filed with the Secretary of State. New Friction was dissolved as of November 3, 1999. The merger FMCI attempted with New Friction did not comply with the statutes of both Delaware and Indiana.

 The purported merger accomplished nothing more than incorporating New Friction and then dissolving it one

---

5. Robert S. Garrett filed a written appearance on behalf of "Friction Material Company, Inc., a Delaware Corporation" on November 15, 1999, twelve days after FMCI purportedly merged with New Friction. *Record* at 179–182. On the same day, Garrett, on behalf of FMCI, filed a motion to enlarge the time for a responsive pleading. On December 20, 1999, Garrett, on behalf of FMCI, filed a motion

entitled "Ex Parte Application For Order Enlarging Time." *Record* at 343. The motion requested additional time to file a responsive pleading. The court granted the motion and enlarged the time for a responsive pleading to February 20, 2000. Neither the CCS nor the record reflects that an answer was filed prior to perfection of the appeal.

day later. New Friction did not exist at the time the certificate of merger from Delaware was presented to the trial court. Accordingly, the attempted merger was ineffective, leaving FMCI in the same position as before the attempted merger. New Friction's ability to receive FMCI's assets, which constituted KeyBank's collateral, was dependent upon a valid merger. The trial court could not entertain New Friction's motion for a receiver, made pursuant to IC § 23–1–47–1, for voluntary dissolution of a corporation, because New Friction was a shell corporation that did not hold FMCI's assets. The court cannot appoint a receiver over assets that do not exist. *Cf. World Bldg. Loan & Inv. Co. v. Marlin*, 151 Ind. 630, 52 N.E. 198 (1898) (a receiver should not be appointed where the sale of mortgaged property was sufficient to pay the debt). The only viable petition for a receiver in existence after November 3, 1999, was the petition by KeyBank.

The trial court's determination that New Friction and FMCI merged is reversed. The trial court's determination granting New Friction's petition for a receiver necessarily fails because New Friction did not exist, in a form other than to wind up and liquidate, at the time the receiver was appointed.

2.

KeyBank contends that whether or not FMCI's attempted merger with New Friction was ineffective, the trial court was required to appoint a receiver pursuant to KeyBank's petition. KeyBank's petition was filed under IC § 34–48–1–1. The statute provides:

A receiver may be appointed by the court in the following cases:

(1) In an action by a vendor to vacate a fraudulent purchase of property, or by a creditor to subject any property or fund to the creditor's claim.

* * *

(3) In all actions when it is shown that the property, fund or rent, and profits in controversy, is in danger of being lost, removed, or materially injured.

(4) In actions in which a mortgagee seeks to foreclose a mortgage. However, upon motion by the mortgagee, *the court shall appoint a receiver* if, at the time the motion is filed, the property is not occupied by the owner as the owner's principal residence and:

(A) it appears that the property is in danger of being lost, removed, or materially injured;

(B) it appears that the property may not be sufficient to discharge the mortgaged debt;

(C) either the mortgagor or the owner of the property has agreed in the mortgage or in some other writing to the appointment of a receiver;

(D) a person not personally liable for the debt secured by the mortgage has, or is entitled to, possession of all or a portion of the property;

(E) the owner of the property is not personally liable for the debt secured by the mortgage; or

(F) all or any portion of the property is being, or is intended to be, leased for any purpose.

(5) When a corporation:

(A) has been dissolved;

(B) is insolvent;

(C) is in imminent danger of insolvency; or

(D) has forfeited its corporate rights.

(6) To protect or preserve, during the time allowed for redemption, any real estate or interest in real estate sold on execution or order of sale, and to secure rents and profits to the person entitled to the rents and profits.

(7) In other cases as may be provided by law or where, in the discretion of

the court, it may be necessary to secure ample justice to the parties.

IC § 34–48–1–1 (emphasis supplied).

It is undisputed that KeyBank met the conditions for the mandatory appointment of a receiver under IC § 34–48–1–1(4). *See Farver v. DeKalb County Farm Bureau,* 576 N.E.2d 1361, 1363 (Ind.Ct.App. 1991) (noting under the former statute, Ind.Code Ann. § 34–12–1–1, repealed and recodified as IC § 34–48–1–1, that the trial court was required to appoint a receiver "when the general conditions of section (4) and any one of its six conditions (A)–(F) are met"). The property was not occupied as a residence and, within the loan workout agreement, FMCI specifically agreed to the appointment of a receiver in the event of a default. *See* IC § 34–48–1–1(4)(C). One of the conditions of default alleged by KeyBank, and admitted by Scott at the hearing on November 10, 1999, was that FMCI diverted funds from the lockbox in violation of the loan workout agreement. The evidence unequivocally demonstrates that a default occurred. The loan workout agreement contained a provision agreeing to the appointment of a receiver in the event of a default.

Additionally, KeyBank presented evidence that FMCI had delinquent tax obligations at the time the workout agreement was executed, that FMCI included inventory in its borrowing base figures to which it did not have an absolute right to payment, and that FMCI did not maintain a debt-to-asset ratio as agreed in the workout agreement.

The failure to appoint a receiver pursuant to KeyBank's request was error. *See Farver v. DeKalb County Farm Bureau,* 576 N.E.2d 1361 (appointment of a receiver is mandatory if section four and any one of the other conditions are met).

■ The appellee [6] argues, and the trial court determined, that because KeyBank requested a receiver and one was appointed, KeyBank is judicially estopped from asserting error with regard to the trial court's decision to appoint a receiver as requested by New Friction.

Judicial estoppel prevents a party from assuming a position in a legal proceeding inconsistent with one previously asserted. *Shewmaker v. Etter,* 644 N.E.2d 922, 931 (Ind.Ct.App.1994), adopted, *Hammes v. Brumley,* 659 N.E.2d 1021 (Ind.1995). While a party may properly plead alternative and contradictory theories, he may not repudiate by contrary assertions that which he has averred in his pleadings to be true. *Marquez v. Mayer,* 727 N.E.2d 768, 773 (Ind.Ct.App.2000) (some citations omitted), *trans. denied.* KeyBank did not repudiate its request for a receiver pursuant to IC § 34–48–1–1 by opposing the receivership pursuant to IC § 23–1–47–1. In fact, Key-Bank has consistently opposed the receivership pursuant to IC § 23–1–47–1, and the possible attendant impairment of its collateral. KeyBank is not judicially estopped from opposing the discretionary appointment of a receiver pursuant to IC § 23–1–47–1 and by asserting the mandatory provisions of IC § 34–48–1–1.

Further, as noted in the first issue, New Friction's petition for a receiver over the assets of FMCI was not viable. New Friction's petition for appointment of a receiver was made pursuant to IC § 23–1–47–1(4), allowing the voluntary dissolution of a corporation under court supervision. Because the receiver should have been appointed pursuant to Title 34 and the foreclosure proceedings, the receiver's duties are controlled by Title 34. While in either case the receiver is a disinterested party, the focus in Title 34 foreclosure proceedings is premised upon known circumstances that portend the impairment of creditors' collateral.

---

**6.** The receiver filed the only brief as appellee. In *Int'l Union of Operating Eng'rs v. Hoisting and Portable Eng'rs,* 231 Ind. 634, 110 N.E.2d 332 (1953), the court noted that a receiver has no vested interest in the receivership appointment, is not a party to the judgment, and is not a necessary party to the appeal.

■ A request for a receiver is not an independent action; instead, it is ancillary to other primary proceedings. *Cf. State ex rel. Busick v. Ewing*, 230 Ind. 188, 102 N.E.2d 370 (1951) (proceedings for the appointment of a receiver are ancillary to a principal action); *State ex rel. Glamack v. Horn*, 228 Ind. 567, 94 N.E.2d 483 (1950) (application for appointment of a receiver is not an independent action but is ancillary to a main action). In this case the principal action pending before the trial was the action for foreclosure.[7] There is no indication that New Friction's action for corporate dissolution required a receiver because the record does not indicate that New Friction had assets. *See World Bldg. Loan & Inv. Co. v. Marlin*, 151 Ind. 630, 52 N.E. 198 (unnecessary to appoint a receiver for corporation where sale of mortgaged property was sufficient to pay the debt). In any event, New Friction did not merge with FMCI before it was dissolved and did not receive the assets upon which KeyBank sought foreclosure.

■ When reviewing an order appointing a receiver, this court construes the evidence and the reasonable inferences in favor of the trial court's determination and does not weigh the evidence. *See Farver v. DeKalb County Farm Bureau*, 576 N.E.2d 1361. "Before we will reverse such an order we must find an abuse of discretion which prejudices the complaining party." *Id.* at 1362. Under the circumstances present here, the trial court abused its discretion by granting the petition for receivership pursuant to IC 23–1–47–1, and by failing to grant the receivership pursuant to the mandatory provisions of IC 34–48–1–1.[8] The cause is remanded for entry of an order granting KeyBank's request for a receiver pursuant to IC § 34–48–1–1.[9]

3.

■ KeyBank contends that the trial court erred as a matter of law by allowing

7. The trial court explicitly chose to appoint the receiver pursuant to IC § 23–1–47–1 in order to give the receiver broader powers, *e.g.*, acting as a custodian to resume operation of the business. *See* IC § 23–1–47–3 (in judicial proceedings to dissolve a corporation, the court may appoint a receiver to liquidate or a custodian to manage the business of the corporation). While the goals of the court may be laudable, *i.e.*, to maximize assets and possibly save jobs by charging the receiver with powers to resume the operations, the record does not reveal any evidence that the resumption of the operations would have been possible. *Cf. Tolliver v. Mathas*, 538 N.E.2d 971 (Ind.Ct.App.1989) (questioning the benefit of infusing a failing company with cash to continue operation of the business). It is not difficult to conceive of KeyBank losing access to more of the secured assets through the receiver's failed attempt to resume operation of the business. The receiver appointed by the court testified that he had no experience as a receiver and that he had limited bankruptcy experience. There is no indication that the receiver had specialized knowledge with regard to the operation of a manufacturing business or any business. Even if New Friction's request for a custodian to operate the business had been viable, it is not entirely clear that the request would have been sustainable under these circumstances.

8. The trial court also found that appointment of a receiver "is necessary to secure ample justice to all parties." *Record* at 373. The finding tracks the language of IC § 34–48–1–1(7), which is a discretionary section. *See* IC § 34–48–1–1 ("A receiver may be appointed" under all sections of the statute except section four which is mandatory).

9. We will address the remaining issues because they have an impact on the proceedings after remand or may arise again when the receiver is appointed pursuant to the mandatory provisions of IC § 34–48–1–1. The receiver contends that KeyBank has waived the other issues because it did not file an additional praecipe after the November 1999 filing and some of the trial court's orders were entered after November 1999. The praecipe was filed after the receiver was appointed. The trial court does not lose its jurisdiction to act until the record of proceedings is filed. *See City of New Haven v. Allen County Board of Zoning Appeals*, 694 N.E.2d 306 (Ind.Ct. App.1998) (the trial court lost general jurisdiction when the record of proceedings was filed), *trans. denied.* The record was filed on February 29, 2000.

the receiver to subordinate KeyBank's security interests in favor of new lenders in order to resume the operation of the business. KeyBank also urges that it was error to pay the receiver and the receiver's attorney from FMCI receivership property, in which KeyBank has a security interest, prior to allowing KeyBank repayment from the secured property.

"The general rule is that a receiver appointed for the purpose of winding up the affairs of an insolvent concern takes the trust property impressed with the then legal or equitable rights of [the corporation's] creditors." *Louden v. B.F. Goodrich Co.,* 97 Ind.App. 433, 185 N.E. 669, 672 (1933); *see also Kist v. Coughlin,* 222 Ind. 639, 57 N.E.2d 199, 205 (1944) ("a receiver takes the res of the receivership estate subject to all liens and equities, and the rights of creditors are fixed as of the time of the appointment"), *opinion modified on other grounds,* 222 Ind. 639, 57 N.E.2d 586 (1944). A receiver's actions cannot diminish or enlarge the rights of the parties in interest. *Kist v. Coughlin,* 222 Ind. 639, 57 N.E.2d 199.

The appellee relies upon *Blythe v. Gibbons,* 141 Ind. 332, 35 N.E. 557 (1893), for the proposition that Indiana allows a receiver to subordinate prior security interests in favor of new lenders. Our examination of *Blythe* reveals that a creditor, with a prior security interest in a "financially embarrassed" corporation's collateral, agreed to release his priority claim to allow the receiver to borrow money in an effort to complete production of materials the corporation was in the process of manufacturing. *Id.* at 558. The creditor agreed to subordinate his interest to new lenders acquired by the receiver. At the time the creditor executed the release, the receiver had asked to borrow $10,000. The receiver then borrowed money in addition to the original $10,000 and again subordinated the creditor's security interest. The creditor sued the receiver claiming a prior security interest that should

have been satisfied before any additional amounts borrowed by the receiver.

The pivotal issue in *Blythe* was the interpretation of the contract releasing the creditor's security interest. After taking parol evidence, the trial court agreed that the creditor was entitled to a priority security interest that had to be satisfied prior to the additional money borrowed by the receiver. The Indiana Supreme Court reversed based upon the terms of the contract. The court determined that the parol evidence should not have been considered because the contract did not limit the receiver to borrowing only the original $10,000 discussed by the parties. The court specifically noted:

> Doubtless he could have declined to release his mortgage unless there was a provision added to the order making his claim prior to any other claim for money borrowed by the receiver under the order of the court in excess of the $10,000 mentioned in the order. Had such terms been added to or contained in the order, the conclusions of law would have been correct. But no such terms were required, and none such are expressed in the order.

*Id.* at 560. The court in *Blythe* was careful to note that the creditor could have refused to subordinate his security interest, but once the creditor agreed to the subordination without explicitly limiting his release to the original $10,000, he could not complain that the receiver wrongfully subordinated his interest for the additional amounts borrowed. *See also Flanders v. Ostrom,* 206 Ind. 87, 187 N.E. 673 (1933) (mechanic's lien holder, and others, consented to receiver borrowing money to complete dwelling where evidence demonstrated that sale of an incomplete house would not satisfy the interests of all creditors).

*Blythe* is inapposite to the circumstances here. The *Blythe* decision entirely rests upon the interpretation of the contract releasing or subordinating the creditor's prior security interest. KeyBank did

not agree to release its prior security interest in favor of new lenders. As noted by KeyBank, absent consent by the creditor, a prior security interest cannot be subordinated in favor of a new lender. *See Blythe v. Gibbons,* 141 Ind. 332, 35 N.E. 557; *Flanders v. Ostrom,* 206 Ind. 87, 187 N.E. 673.

 A receiver may not subordinate the interests of one creditor in favor of those of another creditor.[10] *See Interstate Fin. Corp. v. Dodson,* 105 Ind.App. 513, 12 N.E.2d 989 (1938). The court in *Interstate Fin.* stated:

> No act on the part of the receiver can change a general claim into a preferred one, or place any creditor in a more favorable position than he occupied when the receiver was appointed. A receiver takes the res of the receivership estate subject to all existing liens, but the rights of creditors remain as they were when the receiver was appointed.

*Id.* at 991; *see also Martin v. Forrey,* 100 Ind.App. 371, 193 N.E. 679, 680 (1935) ("[t]he general rule is that the appointment of a receiver does not divest valid pre-existing rights, but that the receiver takes the property subject to the same equities and rights as existed against it in the hands of the person or corporation out of whose possession it was taken"); *Irwin's Bank v. Fletcher Sav. & Trust,* 195 Ind. 669, 145 N.E. 869 (1924) (a receiver takes trust property impressed with the existing legal and equitable rights of the creditors), *modified on other grounds,* 195 Ind. 669, 146 N.E. 909 (1924).

 The court in *American Trust & Sav. Bank v. McGettigan,* 152 Ind. 582, 52 N.E. 793 (1899), stated:

> It is well established that when a court takes possession of the property of an insolvent corporation, and appoints a receiver, such receiver "is the arm of the court," by which it administers the trust for the benefit of the creditors. But the court receives such property impressed with all existing rights and equities of creditors, and the relative rank of claims and the standing of liens remain unaffected by a receivership. Every legal and equitable lien upon the property of the corporation is preserved, with the power of enforcing it. And it is as much the duty of a receiver, in administering an estate, to protect valid preferences and priorities, as it is to make a just distribution among the general creditors. He is strictly the officer of the court, and it is his duty to so conduct the business that the interests of all persons shall be protected. He should not advocate the cause of one claimant against another. Between them he is indifferent, owing a like duty to all, and for that reason should, as far as possible, see to it that each has an equal opportunity to enforce his claim.

\* \* \*

 A receiver, while acting for a court of conscience, must act impartially, and may not sequester the security of one creditor for the benefit of others who have no equity.

*Id.* at 795–96 (citations omitted). A receiver cannot prefer one creditor over another or entice new creditors by subordinating the interests of existing creditors. The trial court erred by allowing the receiver to subordinate KeyBank's security interest in favor of a new lender without KeyBank's consent.

 Contrary to the trial court's determination, subordination of a creditor's superior security interests in favor of a new lender unquestionably renders the creditor a "party aggrieved." *Record* at 383; *see* IC § 34–48–1–10 (allowing an interlocutory appeal by a party aggrieved in

---

10. Ind.Code Ann. § 22–2–10–1 (West Supp. 2000) creates a preference for the payment of "debts owing to laborers or employees" in an amount not exceeding $600 per employee which takes priority over other priority security interests. *See First National Bank v. Gabonay,* 562 N.E.2d 719 (Ind.1990).

an action where a receiver is appointed or refused). A party has standing to challenge a ruling when the party has a "sufficient stake in an otherwise justiciable controversy to obtain judicial resolution ... [and demonstrates an] adequate injury or the immediate danger of sustaining some injury." *State, Indiana Civil Rights Comm'n v. Indpls. Newspapers, Inc.,* 716 N.E.2d 943, 945 (Ind.1999). The trial court erred in its ruling that allowed the receiver to impair KeyBank's collateral and place KeyBank in imminent danger of injury to its collateral.

4.

 KeyBank contends that the trial court erred by appointing Grant Shipley as the attorney for the receiver because Shipley had represented FMCI and New Friction. KeyBank also asserts that the trial court erroneously reduced the assets of the receivership estate by awarding fees and expenses to the receiver and Shipley.

Because Shipley represented both FMCI and New Friction in matters that were adverse to KeyBank's interests and its action for foreclosure, KeyBank contends that Shipley has a conflict of interest and should not act as counsel for the receiver. The receiver and Shipley contend that Shipley represented FMCI only for limited purposes and then represented New Friction. As discussed in footnote 2, Shipley filed his motion to correct the CCS in order to remove the entries that reflect that Shipley appeared on behalf of FMCI. He acknowledges that he appeared on a limited basis for FMCI.

At the November 3, 1999 hearing, on the dissolution of New Friction, the following colloquy occurred:

MR. SHIPLEY: No. I am here with Mr. Scott. He is the sole shareholder, sole Director, sole Officer, of the Friction Material Company Incorporated so that he is—I just want to make it a matter of record that he is here, if there is any question whether this suit is au-

thorized; that is the petition is authorized. This is it.

JUDGE PRO TEM DENMAN: Thank you. (Indecipherable) are New Friction Material Corporation, and it is Cause Number 35C01–9911–MI–00454, with—which this being an action for dissolution of the corporation.

Show Mr. Shipley here for the Corporation, and Mr. Scott on behalf of the Corporation. You may proceed.

MR. SHIPLEY: I have not given notice to any other party of these proceedings because I am proceeding as a voluntary petition for dissolution rather than as a contested petition but (inaudible)—uh—be a suit between shareholders.

*Record* at 393. The hearing was held without notice to KeyBank. Shipley, who was the only attorney who appeared for FMCI and New Friction, recognized that KeyBank "is probably going to be interested" because, as Shipley noted, KeyBank had filed a foreclosure action and had requested a receiver. *Record* at 394.

The record indicates that: 1) Shipley represented FMCI at the hearing on November 3, 1999, 2) on November 3, 1999, Shipley was aware of adversary proceedings against FMCI by KeyBank, 3) Shipley then represented New Friction, 4) no other counsel appeared at the hearing for FMCI or New Friction. The record also reveals that on behalf of New Friction, Shipley requested the appointment of Stephen J. Michael as receiver. Michael testified that he did not have experience in acting as a receiver and that he would employ others, including an attorney, to assist him. Michael implied dependence and reliance upon the attorney. After the trial court appointed Michael as the receiver, Michael then requested that Shipley be appointed as counsel for the receiver.

 KeyBank directs us to the statute regarding qualifications for a receiver and argues by analogy that the at-

torney for the receiver should be no less qualified. The statute provides:

> A court may not appoint:
> (1) a party;
> (2) an attorney representing a party; or
> (3) another person interested in an action;
> as a receiver in that action.

IC § 34–48–1–2. While the statute is phrased in the present tense, we believe the statute would render ineligible for service anyone who had represented a party, anyone who had been a party, and anyone who had been interested in the action, at any point. We agree with KeyBank that an attorney acting as counsel for the receiver should be held to the same standard of impartiality as that for the receiver.

■ Although KeyBank does not specifically challenge the receiver, the required impartiality of the receiver is at the heart of the inquiry. An attorney who could not act as receiver, based upon statutory disqualification, cannot act as counsel for the receiver. *Cf.* Ind. Professional Conduct Rules 1.7 (tenor of the rule and the comments stress the need for professional independence because representation of more than one client in a transaction or in proceedings could give rise to conflicts among the various clients' interests).

The trial court determined that once the receiver was appointed, the debtor corporation, for which Shipley acted as counsel, ceased to act and the receiver acted instead; thus, Shipley did not represent both the corporation and the receiver at the same time. That Shipley represented a party or parties does not mean that the potential conflict of interest evaporated once the receiver was appointed to act in the corporation's stead. The Rules of Professional Conduct and the attendant Comments are instructive:

> Ordinarily, a lawyer may not act as advocate against a client the lawyer represents in some other matter, even if the

other matter is wholly unrelated. . . . The propriety of concurrent representation can depend on the nature of the litigation. For example, a suit charging fraud entails conflict to a degree not involved in a suit for a declaratory judgment concerning statutory interpretation.

Prof.Cond. R. 1.7, Comment at 527.

The receiver is charged with impartially representing the interests of the receivership estate by preserving the assets for the benefit of all creditors and the company. The receiver must represent the interests of KeyBank as well as FMCI. As an advocate for FMCI and New Friction, Shipley has an inherent conflict in properly serving the interests of KeyBank on behalf of the receiver.

■ With regard to previous representation, the Indiana Supreme Court stated:

> [A] lawyer must be disqualified from a pending case if that case "is substantially related to a matter in which the lawyer previously represented another client." *Corn v. State,* 659 N.E.2d 554, 556 (Ind.1995). This test must be applied to the facts of each case to determine whether the issues in the prior and present cases are essentially the same or are closely interwoven therewith. The public trust in the integrity of the judicial process requires that any serious doubt be resolved in favor of disqualification.

*Angleton v. Estate of Angleton,* 671 N.E.2d 921, 928 (Ind.Ct.App.1996) (some citations omitted), *trans. denied.* Shipley's previous representation of two of the parties with interests adverse to KeyBank's within the same and related proceedings necessarily leads to his disqualification to act as counsel for the receiver.

Shipley's attempt to manipulate the record of proceedings constitutes tacit recognition of the perilous position upon which his appointment is perched. The trial court erred by granting the receiver's mo-

tion to employ Shipley as counsel for the receiver.

■ The resolution of the first two issues and remand for appointment of a receiver pursuant to the mandatory provisions of IC § 34–48–1–1 effectively terminates the receiver's appointment. A receiver whose appointment is terminated is not necessarily disqualified from being reappointed in new proceedings. *See Robinson v. Dickey*, 143 Ind. 214, 42 N.E. 638 (1896) (receiver appointed in a void proceeding is not prevented, by the requirement to appoint a disinterested person, from being reappointed in a new proceeding). The receiver, however, must be eligible pursuant to IC § 34–48–1–2. Under the circumstances present here, the eligibility of the current receiver is subject to scrutiny. The receiver requested engagement of an attorney who had represented two of the named parties and sought to subordinate priority security interests that would weaken one party's collateral.

■ KeyBank also contends that the trial court erred by awarding fees and expenses to the receiver and Shipley. Reversal of the appointment of the receiver and the removal of the attorney for the receiver are tantamount to a determination that the receiver and the attorney were without authority to act. In *Int'l Union of Operating Eng'rs v. Hoisting and Portable Eng'rs*, 231 Ind. 634, 110 N.E.2d 332, the Indiana Supreme Court determined that fees for a receiver who acted beyond his authority were not chargeable to the receivership estate. *Id.; cf. Comty. State Bank v. Norman*, 119 Ind.App. 82, 82 N.E.2d 705, 708 (1948) (quoting 53 C.J. Receivers 253, § 425, the court stated: "[w]here a receiver is lawfully appointed at the instance and for the benefit of lien creditors, all proper charges, expenses, and liabilities incurred as incident to duty conferred receivership powers and duties are a charge upon the earnings and corpus of the property superior to the lien creditor.").

The fees and expenses for the receiver and the attorney are not properly chargeable to the receivership estate. The orders granting payment of the fees and expenses are reversed.

5.

KeyBank asserts that the trial court erred in failing to grant its motion for a change of judge. Ind.Code Ann. § 34–48–6–2 provides that in receivership proceedings, the parties are entitled to a change of judge for the same reasons as those permitted in any civil proceedings. Ind. Trial Rule 76 guides changes of judge in civil proceedings. In pertinent part, the rule provides:

> Any such application for change of judge ... shall be filed not later than ten (10) days after the issues are first closed on the merits. Except:
>
> * * *
>
> (5) Where a party has appeared at or received advance notice of a hearing prior to the expiration of the date within which a party may ask for a change of judge or county, and also where at said hearing at trial date is set which setting is promptly entered on the Chronological Case Summary, a party shall be deemed to have waived a request for change of judge or county unless within three days of the oral setting the party files a written objection to the trial setting and a written motion for change of judge or county.

T.R. 76(C)(5).

At the November 4, 1999 hearing, the court informed the parties that the trial on the receivership would be held on November 10, 1999. The trial setting was placed on the CCS. Pursuant to the rules, KeyBank was required to file its written objection and motion for a change of judge within three days of the setting of the trial date. KeyBank filed its motion for a change of judge on November 16, 1999. KeyBank failed to make its request for a change of judge within the prescribed time

period. The request for a change of judge was waived. The trial court did not err by denying KeyBank's request for a change of judge.

The judgment of the trial court is affirmed as to the ruling on the change of judge and reversed as to all other matters presented in this appeal. The cause is remanded for further proceedings consistent with this opinion.

Judgment affirmed in part, and reversed and remanded in part.

MATHIAS, J., and NAJAM, J., concur.